## KAUFMAN *v.* UNITED STATES.

No. 53. Argued November 19, 1968.—Decided March 24, 1969.

218

*Bruce R. Jacob,* by appointment of the Court, 391 U. S. 901, argued the cause and filed briefs for petitioner.

*John S. Martin, Jr.,* argued the cause for the United States. On the brief were *Solicitor General Griswold, Assistant Attorney General Vinson,* and *Beatrice Rosenberg.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question here is whether the claim of a federal prisoner that he was convicted on evidence obtained in an unconstitutional search and seizure is cognizable in a post-conviction proceeding under 28 U. S. C. § 2255.[1]

---

[1] The pertinent provisions of 28 U. S. C. § 2255 are:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the . . . sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner

Petitioner was tried and convicted in the District Court for the Eastern District of Missouri on charges of armed robbery of a federally insured savings and loan association. At trial, petitioner's only defense was insanity. The Court of Appeals for the Eighth Circuit, on petitioner's direct appeal, affirmed the conviction. *Kaufman* v. *United States,* 350 F. 2d 408 (1965).

Petitioner then filed this post-conviction proceeding under § 2255 and included a claim that the finding of sanity was based upon the improper admission of unlawfully seized evidence.[2] After an evidentiary hearing, the District Judge, who had also presided at petitioner's trial, denied relief with a written opinion. As respects the claim of unlawful search and seizure, the opinion states that: "The record does not substantiate this claim. In any event, this matter was not assigned as error on Kaufman's appeal from conviction and is not available as a ground for collateral attack on the instant § 2255 motion." 268 F. Supp. 484, 487 (1967). Petitioner's applications to the District Court and the Court of Appeals for the Eighth Circuit for leave to appeal *in forma pauperis* were denied.

We treat the actions of the District Court and the Court of Appeals as grounded on the view consistently

as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

[2] Petitioner initiated the § 2255 proceeding by a *pro se* motion. The only claim presented was denial of effective assistance of counsel. The District Judge ordered a hearing, and appointed counsel to assist petitioner. Counsel filed a supplemental motion presenting two additional claims, one of which was that the search of petitioner's automobile was illegal.

followed by the Court of Appeals that claims of unlawful search and seizure "are not proper matters to be presented by a motion to vacate sentence under § 2255 but can only be properly presented by appeal from the conviction." [3] Other courts of appeals have indicated a con-

[3] *Warren* v. *United States,* 311 F. 2d 673, 675 (1963); see also *Springer* v. *United States,* 340 F. 2d 950 (1965); *Peters* v. *United States,* 312 F. 2d 481 (1963); *Gendron* v. *United States,* 340 F. 2d 601 (1965). Accord: *United States* v. *Re,* 372 F. 2d 641 (C. A. 2d Cir. 1967); *United States* v. *Jenkins,* 281 F. 2d 193 (C. A. 3d Cir. 1960); *Armstead* v. *United States,* 318 F. 2d 725 (C. A. 5th Cir. 1963); *Eisner* v. *United States,* 351 F. 2d 55 (C. A. 6th Cir. 1965); *De Welles* v. *United States,* 372 F. 2d 67 (C. A. 7th Cir. 1967); *Williams* v. *United States,* 307 F. 2d 366 (C. A. 9th Cir. 1962).

We have not overlooked that the District Court's statement that "this matter was not assigned as error on Kaufman's appeal from conviction . . ." suggests that in any event failure to appeal the conviction renders the § 2255 remedy unavailable. This suggestion is contrary to our decisions that failure to take a direct appeal from conviction does not deprive a federal post-conviction court of power to adjudicate the merits of constitutional claims; the question rather is whether the case is one in which refusal to exercise that power would be appropriate. See *Fay* v. *Noia,* 372 U. S. 391, 438–440 (1963); *Henry* v. *Mississippi,* 379 U. S. 443, 451–452 (1965).

This certainly is not a case where there was a "deliberate by-pass" of a direct appeal. Appointed counsel had objected at trial to the admission of certain evidence on grounds of unlawful search and seizure, but newly appointed appellate counsel did not assign the admission as error either in his brief or on oral argument of the appeal. After oral argument of the appeal, however, petitioner wrote a letter to appellate counsel asking him to submit to the Court of Appeals a claim of illegal search and seizure of items from his automobile. Counsel forwarded petitioner's letter to the Clerk of the Court of Appeals who notified counsel that petitioner's letter had been given to the panel which had heard and was considering the appeal. The opinion of the Court of Appeals affirming petitioner's conviction does not appear to pass on the search-and-seizure claim.

trary view.[4] In light of the importance of the issue in the administration of § 2255 we granted certiorari. 390 U. S. 1002 (1968). We reverse.

The authority of the federal courts to issue the writ of habeas corpus was incorporated in the very first grant of federal court jurisdiction made by the Judiciary Act of 1789, c. 20, § 14, 1 Stat. 81, with the limiting provision that "writs of *habeas corpus* shall in no case extend to prisoners in gaol, unless where they are in custody, under or by colour of the authority of the United States . . . ." Common-law principles initially determined the scope of the writ. *Ex parte Bollman,* 4 Cranch 75, 93–94 (1807). In 1867, however, the writ was extended to state prisoners, and its scope was expanded to authorize relief, both as to federal and state prisoners, in "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States . . . ." Act of February 5, 1867, c. 28, § 1, 14 Stat. 385.

Section 2255 revised the procedure by which federal prisoners are to seek such relief but did not in any respect cut back the scope of the writ. The section was included in the 1948 revision of the Judicial Code "at the instance of the Judicial Conference [of the United States] to meet practical difficulties that had arisen in administering the habeas corpus jurisdiction of the federal courts. Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose was to minimize the difficulties encountered in habeas corpus hearings *by affording the same rights in another and more convenient forum,*" *United States* v.

---

[4] *United States* v. *Sutton,* 321 F. 2d 221 (C. A. 4th Cir. 1963); *Gaitan* v. *United States,* 317 F. 2d 494 (C. A. 10th Cir. 1963).

*Hayman,* 342 U. S. 205, 219 (1952) (italics supplied);[5] "the legislation was intended simply to provide in the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined." *Hill* v. *United States,* 368 U. S. 424, 427 (1962). Thus, we may refer to our decisions respecting the availability of the federal habeas remedy in deciding the question presented in this case.

We noted in *Fay* v. *Noia,* 372 U. S. 391, 409 (1963) that "[t]he course of decisions of this Court . . . makes plain that restraints contrary to our fundamental law, the Constitution, may be challenged on federal habeas even though imposed pursuant to the conviction of a federal court of competent jurisdiction." [6] We have given the same recognition to constitutional claims in § 2255 proceedings. See, *e. g., United States* v. *Hayman, supra; Sanders* v. *United States,* 373 U. S. 1 (1963); *Jordan* v. *United States,* 352 U. S. 904 (1956). The courts of appeals which have denied cognizance under § 2255 to unconstitutional search-and-seizure claims have not generally supplied reasons supporting their apparent departure from this course of our decisions. Rather, these courts have made the bald statement, variously ex-

---

[5] Among the serious administrative problems under habeas corpus practice in the case of federal prisoners was that created by the requirement that the action be brought in the district of confinement, where the records of the case were often not readily available. Section 2255 changed this to require an application by motion filed in the sentencing court. See *United States* v. *Hayman,* 342 U. S. 205, 212–219 (1952).

[6] See, *e. g., Ex parte Lange,* 18 Wall. 163 (1874); *Ex parte Wilson,* 114 U. S. 417 (1885); *Callan* v. *Wilson,* 127 U. S. 540 (1888); *Counselman* v. *Hitchcock,* 142 U. S. 547 (1892); *Johnson* v. *Zerbst,* 304 U. S. 458 (1938); *Bowen* v. *Johnston,* 306 U. S. 19 (1939); *Waley* v. *Johnston,* 316 U. S. 101 (1942); *Von Moltke* v. *Gillies,* 332 U. S. 708 (1948); see also cases collected in *Fay* v. *Noia,* 372 U. S. 391, 409, n. 17.

pressed, that a motion under § 2255 cannot be used in lieu of an appeal.[7] It is true that in *Sunal* v. *Large,* 332 U. S. 174, 179 (1947), we held that "the writ is not designed for collateral review of errors of law committed by the trial court—the existence of any evidence to support the conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross the jurisdictional line." But we there recognized that federal habeas relief for *constitutional* claims asserted by federal prisoners is not limited by that rule. 332 U. S., at 182; see also *Hill* v. *United States, supra,* at 428. Later, in *Townsend* v. *Sain,* 372 U. S. 293, 311–312 (1963), we pointed out the vital distinction between the appellate and habeas functions and concluded that habeas relief cannot be denied solely on the ground that relief should have been sought by appeal to prisoners alleging constitutional deprivations:

> "The whole history of the writ—its unique development—refutes a construction of the federal courts'

---

[7] See, *e. g.,* "A motion under § 2255 cannot be made the substitute for an appeal," *Peters* v. *United States, supra,* n. 3, at 482 (C. A. 8th Cir.); "Section 2255 provides for a collateral attack on a judgment of conviction and is not a substitute for appeal for alleged errors committed at the trial," *Eisner* v. *United States, supra,* n. 3, at 57 (C. A. 6th Cir.); "Questions concerning the admissibility of evidence obtained directly or indirectly as a result of an unlawful search can be reviewed on an appeal from a judgment of conviction, but cannot be dealt with in a section 2255 proceeding," *Williams* v. *United States, supra,* n. 3, at 367 (C. A. 9th Cir.); "It has long been the law that habeas corpus and § 2255 will not be allowed to do service as an appeal, and that so far as federal prisoners are concerned, failure to appeal will normally bar resort to post-conviction relief," *Nash* v. *United States,* 342 F. 2d 366, 367 (C. A. 5th Cir. 1965). These paraphrase the statement in *Sunal* v. *Large,* 332 U. S. 174, 178 (1947), that "the writ of *habeas corpus* will not be allowed to do service for an appeal," but that statement was made in the context of an alleged nonconstitutional trial error. See *United States* v. *Sobell,* 314 F. 2d 314, 322–323 (C. A. 2d Cir. 1963).

habeas corpus powers that would assimilate their task to that of courts of appellate review. The function on habeas is different. It is to test by way of an original civil proceeding, independent of the normal channels of review of criminal judgments, the very gravest allegations. . . . The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew."

The Government suggests another rationale for denying post-conviction relief to federal prisoners with illegal search-and-seizure claims. The denial of Fourth Amendment protection against unreasonable searches and seizures, the Government's argument runs, is of a different nature from denials of other constitutional rights which we have held subject to collateral attack by federal prisoners. For unlike a claim of denial of effective counsel or of violation of the privilege against self-incrimination, as examples, a claim of illegal search and seizure does not impugn the integrity of the fact-finding process or challenge evidence as inherently unreliable; rather, the exclusion of illegally seized evidence is simply a prophylactic device intended generally to deter Fourth Amendment violations by law enforcement officers. This deterrent function, the Government argues, is adequately served by the opportunities afforded a federal defendant to enforce the exclusionary rule before or at trial, so that the relatively minimal additional deterrence afforded by a post-conviction remedy would not seem to justify, except in special circumstances, the collateral release of guilty persons who did not raise the search-and-seizure

issue at trial or on direct appeal. In sum, the Government sponsors adoption by this Court of the rule announced in the majority opinion of the Court of Appeals for the District of Columbia Circuit in *Thornton* v. *United States,* 125 U. S. App. D. C. 114, 116, 368 F. 2d 822, 824 (1966), that in the absence of a showing of "special circumstances" a claim by a federal prisoner that evidence admitted at his trial was the fruit of an unconstitutional search or seizure is not properly the ground of a collateral attack on his conviction.

The Government concedes in its brief that we have already rejected this approach with respect to the availability of the federal habeas corpus remedy to state prisoners. This rejection was premised in large part on a recognition that the availability of collateral remedies is necessary to insure the integrity of proceedings at and before trial where constitutional rights are at stake. Our decisions leave no doubt that the federal habeas remedy extends to state prisoners alleging that unconstitutionally obtained evidence was admitted against them at trial. See, *e. g., Mancusi* v. *DeForte,* 392 U. S. 364 (1968); *Carafas* v. *LaVallee,* 391 U. S. 234 (1968); *Warden* v. *Hayden,* 387 U. S. 294 (1967); see also *Henry* v. *Mississippi,* 379 U. S. 443, 452 (1965). The Government argues, however, that federal post-conviction relief should not be available to federal prisoners in as broad a range of cases as that cognizable when presented by state prisoners. Support for this proposition is drawn from the fact that considerations which this Court, in *Fay* v. *Noia, supra,* deemed justifications for affording a federal forum to state prisoners—*e. g.,* the necessity that federal courts have the "last say" with respect to questions of federal law, the inadequacy of state procedures to raise and preserve federal claims, the concern that state judges may be unsympathetic to federally created rights, the institutional constraints on the exercise of this Court's

certiorari jurisdiction to review state convictions—do not obtain with respect to federal prisoners. Thus, we are told that the federal prisoner, having already had his day in federal court, stands in a different position with regard to federal collateral remedies than does the state prisoner. Conceding this distinction, we are unable to understand why it should lead us to restrict, completely or severely, access by federal prisoners with illegal search-and-seizure claims to federal collateral remedies, while placing no similar restriction on access by state prisoners.

The opportunity to assert federal rights in a federal forum is clearly not the sole justification for federal post-conviction relief; otherwise there would be no need to make such relief available to federal prisoners at all. The provision of federal collateral remedies rests more fundamentally upon a recognition that adequate protection of constitutional rights relating to the criminal trial process requires the continuing availability of a mechanism for relief. This is no less true for federal prisoners than it is for state prisoners.

In *Townsend* v. *Sain, supra,* at 313, 318, we set down the circumstances under which a federal court must review constitutional claims—including, of course, claims of illegal search and seizure—presented by state prisoners:

> "If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
> . . . . .

"In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge."

Of these, only the duty of the federal habeas court to scrutinize "the fact-finding procedure" under (3) does not apply in the case of a federal prisoner; federal fact-finding procedures are by hypothesis adequate to assure the integrity of the underlying constitutional rights. Thus, when a request for relief under § 2255 asserts a claim of unconstitutional search and seizure which was tested by a motion to suppress at or before trial under Fed. Rule Crim. Proc. 41 (e), the § 2255 court need not stop to review the adequacy of the procedure established by that Rule. In this respect, and in this respect only, the position of the federal prisoner does differ from that of the state prisoner. We perceive no differences between the situations of state and federal prisoners which should make allegations of the other circumstances listed in *Townsend* v. *Sain* less subject to scrutiny by a § 2255 court.[8]

---

[8] Where a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a § 2255 hearing. Section 2255 provides for hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." In *Sanders* v. *United States*, 373 U. S. 1 (1963), we announced standards governing the determination whether a hearing should be ordered in the case of a successive motion under § 2255. Similarly, where the trial or appellate court has had a "say" on a federal prisoner's claim, it may be open to the § 2255 court to determine that on the basis of the motion, files, and records, "the prisoner is entitled to no relief." See *Thornton* v. *United States*, 125 U. S. App. D. C. 114, 125, 368 F. 2d 822, 833 (1966) (dissenting opinion of Wright, J.).

Furthermore, the § 2255 court may in a proper case deny relief to a federal prisoner who has deliberately bypassed the orderly federal procedures provided at or before trial and by way of appeal—*e. g.,* motion to suppress under Fed. Rule Crim. Proc. 41 (e) or appeal under Fed. Rule App. Proc. 4 (b). *Fay* v. *Noia, supra,* n. 3, at 438; *Henry* v. *Mississippi, supra,* n. 3, at 451–452.

The approach adopted by the court in *Thornton* and pressed upon us here exalts the value of finality in criminal judgments at the expense of the interest of each prisoner in the vindication of his constitutional rights. Such regard for the benefits of finality runs contrary to the most basic precepts of our system of post-conviction relief. In *Fay* v. *Noia, supra,* at 424, a case involving a state prisoner who claimed that his confession was coerced, we said that "conventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review." The same view was expressed in *Sanders* v. *United States, supra,* at 8, a case involving a federal prisoner: "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." This philosophy inheres in our recognition of state prisoners' post-conviction claims of illegal search and seizure. Plainly the interest in finality is the same with regard to both federal and state prisoners. With regard to both, Congress has determined that the full protection of their constitutional rights requires the availability of a mechanism for collateral attack. The right then is not merely to a federal forum but to full and fair consideration of constitutional claims. Federal prisoners are no less entitled to such consideration than are state prisoners. There is no reason to treat federal trial errors as less destructive of constitutional guarantees than state trial errors, nor to give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations.

We cannot agree with the suggestion in MR. JUSTICE BLACK's dissent that the weight to be accorded the bene-

fits of finality is as controlling in the context of post-conviction relief as in the context of retroactive relief. The availability of post-conviction relief serves significantly to secure the integrity of proceedings at or before trial and on appeal. No such service is performed by extending rights retroactively. Thus, collateral relief, unlike retroactive relief, contributes to the present vitality of all constitutional rights whether or not they bear on the integrity of the fact-finding process.

More fundamentally, the logic of his dissent cannot be limited to the availability of post-conviction relief. It brings into question the propriety of the exclusionary rule itself. The application of that rule is not made to turn on the existence of a possibility of innocence; rather, exclusion of illegally obtained evidence is deemed necessary to protect the right of all citizens, not merely the citizen on trial, to be secure against unreasonable searches and seizures. As we said in *Miller* v. *United States,* 357 U. S. 301, 313 (1958):

> "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house."

Finally, MR. JUSTICE BLACK's reliance on petitioner's concession of participation in the robbery is misplaced.

That concession is irrelevant in light of petitioner's defense at trial based on insanity. Surely that defense, any more than any other defense, cannot be prejudiced by the admission of unconstitutionally seized evidence.

We thus reject the rule announced in the majority opinion in *Thornton* and adopt the reasoning of Judge Wright's dissent in that case, 125 U. S. App. D. C., at 123, 368 F. 2d, at 831:

"There is undoubtedly a difference in the way federal courts should treat post-conviction applications by state and federal prisoners. Brown v. Allen, [344 U. S. 443, 508], 73 S. Ct. 397 (opinion of Mr. Justice Frankfurter), interprets 28 U. S. C. § 2241 as requiring federal courts to have the 'last say' with respect to questions of federal law. Federal prisoners applying for collateral relief often have had their constitutional claims passed on by federal courts at trial or on appeal, so the Brown v. Allen rationale for federal court relitigation is inapposite. But this difference provides no basis for limiting the grounds upon which federal prisoners may obtain collateral relief, or for formulating a separate set of rules to determine when a federal prisoner's claim has adequately been adjudicated. Where a federal trial or appellate court has had a 'say' on a federal prisoner's claim, there may be no need for collateral relitigation. But what if the federal trial or appellate court said nothing because the issue was not raised? What if it is unclear whether the 'say' was on the merits? What if new law has been made or facts uncovered relating to the constitutional claim since the trial and appeal? What if the trial or appellate court based its rulings on findings of fact made after a hearing not 'full and fair' within the meaning of Townsend v. Sain, 372 U. S. 293, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963)?

> All these problems are common to state and federal prisoners, and the interest in finality operates equally in both situations. These problems raise, not the issue whether relitigation is necessary, but whether one adequate litigation has been afforded. It would be anomalous indeed, especially in light of the interest in maintaining good federal-state relations, if defaults not precluding one adequate federal review for the constitutional claims of state prisoners precluded such a review for federal prisoners, or if defects rendering state court adjudications inadequate did not similarly affect federal court adjudications."

We therefore hold that a claim of unconstitutional search and seizure is cognizable in a § 2255 proceeding. The order of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

Petitioner Kaufman was convicted of robbing a federally insured savings and loan association while armed with a pistol. Part of the evidence used against him was a revolver, some of the stolen traveler's checks, a money-order receipt, a traffic summons, and gasoline receipts. During the trial petitioner's counsel conceded that petitioner had committed the robbery but contended he was not responsible for the crime because he was mentally ill at the time. An appeal from his conviction was rejected by the Court of Appeals, 350 F. 2d 408 (C. A. 8th Cir. 1965), and we denied certiorari, 383 U. S. 951 (1966). Three months later—after the

decision had become what is generally considered "final"—he filed in the Federal District Court the present motion under 28 U. S. C. § 2255, asking that his sentence be vacated on the ground, among others, that the trial court had committed error in not suppressing the evidence against him because the articles had been obtained by an unlawful search and seizure. Despite the fact that he has never, either in his trial or in this proceeding, asserted that he had not actually physically committed the robbery with a pistol, and despite the fact that this plainly reliable evidence clearly shows, along with the other evidence at trial, that he was not insane, the Court is reversing his case, holding that he can collaterally attack the judgment after it had become final. I dissent.

My dissent rests on my belief that not every conviction based in part on a denial of a constitutional right is subject to attack by habeas corpus or § 2255 proceedings after a conviction has become final. This conclusion is supported by the language of § 2255 which clearly suggests that not every constitutional claim is intended to be a basis for collateral relief.[1] And, as this Court has said in *Fay* v. *Noia,* with reference to habeas corpus,

> "Discretion is implicit in the statutory command that the judge . . . 'dispose of the matter as law and justice require,' 28 U. S. C. § 2243 . . . ." 372 U. S. 391, 438.

Of course one important factor that would relate to whether the conviction should be vulnerable to collateral

---

[1] "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been *such a denial* or infringement of the constitutional rights of the prisoner *as to render the judgment vulnerable to collateral attack,* the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. (Emphasis supplied.)

attack is the possibility of the applicant's innocence. For illustration, few would think that justice requires release of a person whose allegations clearly show that he was guilty of the crime of which he had been convicted.

I agree with the Court's conclusion that the scope of collateral attack is substantially the same in federal habeas corpus cases which involve challenges to state convictions, as it is in § 2255 cases which involve challenges to federal convictions. The crucial question, however, is whether certain types of claims, such as a claim to keep out relevant and trustworthy evidence because the result of an unconstitutional search and seizure, should normally be open in these collateral proceedings. This question was fully and carefully considered by the Court of Appeals for the District of Columbia Circuit in *Thornton* v. *United States,* 125 U. S. App. D. C. 114, 368 F. 2d 822 (1966), and I agree substantially with the opinion of Judge Leventhal for the majority of that court, which states: [2]

> "[G]enerally a claim by a federal prisoner that evidence admitted at his trial was the fruit of an unconstitutional search or seizure is not properly the ground of a collateral attack on his conviction. As further noted below, this rule is subject to an exception for special circumstances . . . .
>
> . . . . .
>
> "Many opinions declare that collateral attack, as by habeas corpus, is available to correct the denial of a constitutional right. This is the general rule but it is not an absolute. . . .
>
> . . . . .
>
> "The courts are called on to evolve and provide procedures and remedies that are effective to vindicate constitutional rights. However, where effective procedures are available in the direct proceeding, there

---

[2] 125 U. S. App. D. C., at 116–118, 368 F. 2d, at 824–826.

is no imperative to provide an additional, collateral review, leaving no stone unturned, when exploration of all avenues of justice at the behest of individual petitioners may impair judicial administration of the federal courts, as by making criminal litigation interminable, and diverting resources of the federal judiciary."

It was formerly the rule in this country that judgments were so impervious to collateral attack that a defendant could not collaterally attack his conviction even after the Government had admitted his innocence. That rule, obviously a harsh and what might seem to most people an indefensible one, has of course now been abandoned. It was finally put to rest in *Fay* v. *Noia*, 372 U. S. 391 (1963). It is this element of probable or possible innocence that I think should be given weight in determining whether a judgment after conviction and appeal and affirmance should be open to collateral attack, for the great historic role of the writ of habeas corpus has been to insure the reliability of the guilt-determining process.[3] In *Fay* v. *Noia,* Noia and his two codefendants had been convicted of felony murder in New York state court and each had been sentenced to life imprisonment. The sole evidence against each defendant was his confession. While his codefendants appealed, Noia did not, for fear that if he secured a reversal and was reconvicted at a second trial, he would be sentenced to death. The confessions of one codefendant were subsequently found by the Court of Appeals for the Second Circuit to have been coerced by practices which that court described as "satanic." *United States ex rel. Caminito* v. *Murphy,* 222 F. 2d 698,

---

[3] See Mishkin, The Supreme Court, 1964 Term—Foreword: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L. Rev. 56, 79–86 (1965).

701 (1955). The conviction of Noia's other codefendant was also reversed, *People* v. *Bonino,* 1 N. Y. 2d 752, 135 N. E. 2d 51, and since there was no evidence other than the coerced confessions that they were guilty, the State apparently declined to reprosecute them and they were set free. See *United States ex rel. Noia* v. *Fay,* 183 F. Supp. 222, 227, n. 6 (1960). Noia, however, languished in prison, even though his alleged confederates had been released. Both the New York courts and the Federal District Court declined to review his case on the ground that his 1942 failure to appeal made his conviction "final." He remained in jail despite the fact that he "continuously asserted his innocence of the crime for which he [had] been convicted" in his petition for habeas corpus and elsewhere. See Transcript of Record in No. 84, October Term, 1962, p. 8.

It was under these circumstances, strongly appealing to the Court's sense of what justice required, that this Court held that Noia was entitled to challenge his conviction even though it had previously become "final." My Brother HARLAN, dissenting, concluded that no matter how appealing the circumstances, one wrongly convicted must be consigned to the slow, tedious, and uncertain road to whatever relief he might possibly get from the Chief Executive. On the contrary, I agreed with *Fay* v. *Noia* as one of the bright landmarks in the administration of criminal justice. But I did not think then and do not think now that it laid down an inflexible rule compelling the courts to release every prisoner who alleges in collateral proceedings some constitutional flaw, regardless of its nature, regardless of his guilt or innocence, and regardless of the circumstances of the case. The Court's opinion in *Noia* shows, from beginning to end, that the defendant's guilt or innocence is at least one of the vital considerations in determining whether collateral relief should be available to a convicted de-

fendant. The Court repeatedly emphasized that the only evidence against Noia was a coerced confession and that he remained in jail while the State permitted his alleged confederates to go free. The Court made it clear that equitable considerations such as these should play a part in determining the availability of federal habeas corpus:

> "Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a limited discretion in the federal judge to deny relief to an applicant under certain circumstances. Discretion is implicit in the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, 'dispose of the matter as law and justice require,' 28 U. S. C. § 2243; and discretion was the flexible concept employed by the federal courts in developing the exhaustion rule. Furthermore, habeas corpus has traditionally been regarded as governed by equitable principles." [4]

And in its closing paragraph, the Court stressed:

> "Today as always few indeed is the number of state prisoners who eventually win their freedom by means of federal habeas corpus. Those few who are ultimately successful are persons whom society has grievously wronged and for whom belated liberation is little enough compensation." [5]

Surely, it cannot be said of Kaufman, an admitted armed robber, that he is a person whom "society has grievously wronged and for whom belated liberation is little enough compensation."

---

[4] 372 U. S. 391, 438.

[5] *Id.*, at 440–441.

Although, as the Court of Appeals indicated in the *Thornton* case, habeas corpus has been thought of broadly as a means of securing redress for the violation of any "constitutional right," it was true until *Mapp* v. *Ohio,* 367 U. S. 643 (1961), that almost every "constitutional right" referred to in this sense played a central role in assuring that the trial would be a reliable means of testing guilt. It is true that the prohibition against coerced confessions has been vigorously enforced even in the absence of proof that the confession itself was unreliable, *e. g., Rogers* v. *Richmond,* 365 U. S. 534 (1961), but even this prohibition rests to a substantial extent on recognition that all such confessions "may be and have been, to an unascertained extent, found to be untrustworthy," *id.,* at 541.

A claim of illegal search and seizure under the Fourth Amendment is crucially different from many other constitutional rights; ordinarily the evidence seized can in no way have been rendered untrustworthy by the means of its seizure and indeed often this evidence alone establishes beyond virtually any shadow of a doubt that the defendant is guilty. A good example of such a case is one in which I filed a dissent today, *Harris* v. *Nelson, post,* p. 286. The prisoner in *Harris* was convicted on a charge that he had been in possession of marihuana, possession alone being a crime under state law. He later collaterally attacked that conviction, alleging that the marihuana had been unlawfully seized from his home, where he had been in illegal possession of it. He did not and evidently could not allege a single fact that would indicate the slightest possibility that he actually was innocent of the crime charged. Under these circumstances it implies no disrespect for the importance of the Fourth Amendment to recognize the simple proposition that treatment of search-and-seizure claims should

correspond to the purpose of the Fourth Amendment exclusionary rule. As the Court of Appeals said in *Thornton:* [6]

"Our rejection of the availability of collateral review for claims of unreasonable search and seizure (in the absence of exceptional circumstances) is not attributable to a low regard for the significance of the Fourth Amendment in our times and civilization. On the contrary, the magnitude of the Fourth Amendment in our constitutional constellation has prompted unusual remedies by Congress, as well as the courts. . . .

". . . The corollary, however, is a contraction of the need for enlarging collateral review in order to assure effective vindication of the constitutional interests involved."

The purpose of the exclusionary rule, unlike most provisions of the Bill of Rights, does not include, even to the slightest degree, the goal of insuring that the guilt-determining process be reliable. Rather, as this Court has said time and again, the rule has one primary and overriding purpose, the deterrence of unconstitutional searches and seizures by the police. As the Court said in *Linkletter* v. *Walker,* 381 U. S. 618, 636–637 (1965):

"*Mapp* had as its prime purpose the enforcement of the Fourth Amendment through the inclusion of the exclusionary rule within *its rights.* This, *it* was found, was the only effective deterrent to lawless police action. Indeed, all of the cases since *Wolf* [v. *Colorado,* 338 U. S. 25 (1949)] requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action."

How this purpose can be served by the broad and unqualified rule adopted by the Court today is something

---

[6] 125 U. S. App. D. C., at 118, 368 F. 2d, at 826.

of a mystery. Of course, the shortcomings inherent in any human system make it impossible to eliminate entirely all the incentives to conduct an illegal search. It would seem rather fanciful, however, to suggest that these inevitable incentives would be decreased to any significant extent by the fact that if a conviction is obtained, after adequate opportunities have been provided to litigate constitutional claims, and if this conviction is upheld by all the reviewing courts, the validity of the search and seizure may later be questioned in a collateral proceeding. Understandably, the Court does not make any such suggestion and indeed makes no effort to justify its result in terms of the long-recognized deterrent purpose of the exclusionary rule. The Court instead simply provides us with a string of citations that supposedly settle the question, at least as to state convictions, *ante,* at 225, but the Court neglects to mention that not one of the cases it cites contains a single intimation that the issue before us now was even considered.[7]

The only other justification for the Court's result that can be gleaned from its opinion is the statement that the reasoning of the Court of Appeals in *Thornton* "exalts the value of finality in criminal judgments at the expense of the interest of each prisoner in the vindication of his constitutional rights." *Ante,* at 228. This astonishing statement is directly contrary to the principles this Court has consistently applied on this subject, as for example in *Elkins* v. *United States,* 364 U. S. 206, 217 (1960), where we said: "The [exclusionary] rule is calculated to prevent, not to repair. Its purpose is to deter—

---

[7] Only one of these decisions, *Mancusi* v. *DeForte,* 392 U. S. 364 (1968), actually ordered the granting of habeas relief on the basis of a search-and-seizure claim, and in *Mancusi* (as in *Warden* v. *Hayden,* 387 U. S. 294 (1967)) the issue was not even theoretically before us since only in the most exceptional case would we have considered a question not mentioned in the State Warden's petition for a writ of certiorari.

to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." This same recognition that no personal right of the prisoner can be vindicated in these Fourth Amendment cases was stressed in this Court's opinion in *Linkletter, supra:* "We cannot say that this [deterrent] purpose would be advanced by making the rule retrospective. The misconduct of the police prior to *Mapp* has already occurred and will not be corrected by releasing the prisoners involved. . . . Finally, the ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late." 381 U. S., at 637.

The Court's consistent adherence to this approach has continued through all of the various "retroactivity" cases, including today's decision in *Desist* v. *United States, post,* p. 244, in which the Court emphasizes, quoting from *Linkletter,* that " '[t]he misconduct of the police . . . has already occurred and will not be corrected by releasing the prisoners involved,' " and that "the exclusionary rule is but a 'procedural weapon that has no bearing on guilt.' " It would be hard to find a more apt summary of this Court's holdings in these "retroactivity" cases than the statement that they "exal[t] the value of finality in criminal judgments at the expense of the interest of each prisoner in the vindication of his constitutional rights." But since this is the course the Court has chosen to steer, I think it would not be amiss to suggest that the Court at least decide this case on the same principles and seek to achieve a modest semblance of consistency. Instead the Court adopts a rule that offers no discernible benefits in enforcing the Fourth Amendment and insures that prisoners who are undoubtedly guilty will be set free.

It is seemingly becoming more and more difficult to gain acceptance for the proposition that punishment of

the guilty is desirable, other things being equal. One commentator, who attempted in vain to dissuade this Court from today's holding, thought it necessary to point out that there is "a strong public interest in convicting the guilty."[8] Indeed the day may soon come when the ever-cautious law reviews will actually be forced to offer the timid and uncertain contention, recently suggested satirically, that "crime may be thought socially undesirable, and its control a 'valid governmental objective' to which the criminal law is 'rationally related.'"[9]

I cannot agree to a rule, however technical it may seem, that leads to these results. I would not let any criminal conviction become invulnerable to collateral attack where there is left remaining the probability or possibility that constitutional commands related to the integrity of the fact-finding process have been violated. In such situations society has failed to perform its obligation to prove beyond a reasonable doubt that the defendant committed the crime. But it is quite a different thing to permit collateral attack on a conviction after a trial according to due process when the defendant clearly is, by the proof and by his own admission, guilty of the crime charged. There may, of course, as the Court of Appeals held in the *Thornton* case, be some special circumstances in which allowance of a Fourth Amendment claim in a collateral proceeding would be justified in terms of the relevant and applicable constitutional principles. Some of the situations possibly falling in this category have been enumerated and examined by others,[10] and there are circumstances alleged here that might lead

---

[8] Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. Pa. L. Rev. 378, 389 (1964).

[9] 79 Harv. L. Rev. (parody ed.) 10, 12 (March 1966).

[10] *Thornton* v. *United States, supra;* Amsterdam, *supra,* n. 8, at 391–392, n. 60.

to such a disposition of this case.[11] But the Court does not rest its judgment on this narrow ground, and I therefore do not attempt to pass on it. I do contend, however, that the court below was right in refusing to follow the broad rule that this Court is announcing today. In collateral attacks whether by habeas corpus or by § 2255 proceedings, I would always require that the convicted defendant raise the kind of constitutional claim that casts some shadow of a doubt on his guilt. This defendant is permitted to attack his conviction collaterally although he conceded at the trial and does not now deny that he had robbed the savings and loan association and although the evidence makes absolutely clear that he knew what he was doing. Thus, his guilt being certain, surely he does not have a constitutional right to get a new trial. I cannot possibly agree with the Court.

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, dissenting.

I concur in much of my Brother BLACK's opinion, and agree with his conclusion that 28 U. S. C. § 2255 should be available to contest the admission of evidence allegedly seized in violation of the Fourth Amendment only under limited and special circumstances of the sort suggested in *Thornton* v. *United States,* 125 U. S. App. D. C. 114, 368 F. 2d 822 (1966). I must, however, disassociate myself from any implications, see, *e. g., ante,* at 232–233, 234–236, that the availability of this collateral remedy turns on a petitioner's assertion that he was in fact innocent, or on the substantiality of such an allegation.

I think it appropriate to add that the main roots of the situation against which my Brother BLACK so rightly

---

[11] Petitioner's allegations suggest that he may have been unjustifiably frustrated in his efforts to raise the search-and-seizure issue on direct appeal from his conviction. See the Court's opinion, *ante,* at 220, n. 3.

inveighs are to be found in the Court's decisions in *Townsend* v. *Sain,* 372 U. S. 293 (1963), and *Fay* v. *Noia,* 372 U. S. 391 (1963), which have opened wide the gates to collateral re-examination of both state and federal criminal convictions. Be that as it may, the present case offers an opportunity to narrow the entrance in a fair and practicable manner. In rejecting the opportunity, the Court once again* this Term imposes a burden on the judiciary and on society at large, which results in no legitimate benefit to the petitioner and does nothing to serve the interests of justice.

I therefore dissent from the opinion of the Court.

---

*See my dissent in *Gardner* v. *California,* 393 U. S. 367, 371 (1969).