Harold George **SHADD**, Petitioner,

v.

**The UNITED STATES of America,**
**Respondent.**

**Civ. A. No. 76–847.**

United States District Court,
W. D. Pennsylvania.

Nov. 30, 1976.

Harold George Shadd, pro se.

Joel Strauss, Asst. U. S. Atty., Pittsburgh, Pa., for respondent.

## OPINION

MARSH, District Judge.

The petitioner is currently on parole under a 15-year sentence imposed on November 15, 1972, following his conviction in a jury trial for bank robbery (Criminal Action 72–34). He has filed this action alleging that his constitutional rights were violated when the prosecutor used the petitioner's "pretrial silence" to impeach petitioner's testimony at his trial. In support of this claim, petitioner relies upon the recent Supreme Court decision in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).[1]

In *Doyle*, two defendants who had been given *Miranda* warnings after their arrests, took the witness stand and gave an exculpatory story that they had not previously told to the police or the prosecutor. They were then cross-examined, over objection, as to why they had not given the arresting officer the exculpatory explanations. The Court held that in light of the requirement that a person taken into custody be advised immediately that he has the right to remain silent and that anything he says may be used against him, it would be fundamental-

---

1. In an earlier action filed by this petitioner, the court found that the petitioner had abused the legal process through the filing of numerous, repetitious pleadings for post-conviction relief, and the court granted a government motion for an injunction enjoining continued abuse. An exception to the terms of that injunction permits the petitioner to raise claims based upon recent changes in the law. See Civil Action No. 75–1469; Order of Court dated January 26, 1976.

ly unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an exculpatory statement subsequently offered at trial. 426 U.S. at 616–618, 96 S.Ct. 2240, 2244. The Court concluded that since silence in the wake of these warnings may be nothing more than the arrestee's exercise of *Miranda* rights, "every post-arrest silence is insolubly ambiguous . . .."

█ In the case at hand, petitioner's post-arrest "silence" occurred while he was testifying at a pretrial hearing on his own motion for return of seized property. Among the items petitioner sought to have returned was $15,568 in cash which had been found in a suitcase in petitioner's home on January 25, 1972. The money included $520 in twenty-dollar bills the serial numbers of which matched the bait money list kept by the bank that petitioner was charged with having robbed on November 19, 1971.

At the pretrial hearing on petitioner's motion, *petitioner's counsel* asked him where the money had come from. Petitioner replied, "I borrowed from a lot of people." [2] Petitioner went on to detail how he had borrowed thousands of dollars from several individuals. He said that some of the money in the home was part of $18,000 which he had borrowed in December, 1971, from an individual named "Mannerino" at a hot dog stand in Youngstown, Ohio. Petitioner was asked if he had any source of income, and he explained that he worked as a chef. When asked if there was anything

else, petitioner added that he had had some business holdings in California, including three restaurants, a hotel and a dance studio. Petitioner's counsel then asked, "At the time of your arrest, how were you employed?" Petitioner explained that he had been busy setting up Candy Andy Publications for which he had already solicited 500 subscriptions.

At the subsequent bank robbery trial, petitioner took the witness stand in defense, introduced as evidence a gallon jug of whiskey, and testified that he had earned the cash found in his suitcase primarily as a large scale dealer in "moonshine." On cross-examination, the prosecutor asked petitioner why he had failed to mention this when he had *testified* previously about his sources of income. Petitioner replied that for him "to bring this out before, unless I had to, that would be stupidity on my part." [3] Petitioner's counsel objected on the ground that the prosecutor "wants to impeach Mr. Shadd on prior, previous testimony." The objection was overruled.

This was not a *Doyle* situation.[4] The basis of *Doyle* is the implicit assurance in the *Miranda* warnings that silence will carry no penalty. But those warnings did not assure the petitioner that he could fail to tell the whole truth while testifying under oath at a pretrial hearing and yet suffer no penalty. Quite to the contrary, the *Miranda* warnings advise an arrestee that anything he says may later be used against him.[5] Petitioner cannot claim that he was

2. See transcript of the testimony of Harold G. Shadd on July 17, 1972 filed at Criminal No. 72–108.

3. Trial transcript at 429–431. At trial, the issue of petitioner's sudden acquisition of a large sum of money was raised by evidence that petitioner had been on public assistance from January, 1971, to October, 1971, and that in December, 1971, he had purchased two automobiles for nearly $15,000 and that he had given a car salesman $10,000 in cash in exchange for a $10,000 check.

Petitioner testified that he had borrowed $21,000 from a man in Youngstown and that by the time of trial he had repaid almost $10,000. In a post-trial motion filed in June, 1974, petitioner claimed that he had recently discovered

a number of handwritten loan receipts which would prove that he had repaid a total of $22,000 on the loan as of June, 1972.

4. There is no indication in the *Doyle* opinion that the Supreme Court intended that decision to be applied retroactively. See *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1776, 16 L.Ed.2d 882 (1966).

5. Even immediately after his arrest, petitioner apparently chose not to exercise his right to remain silent. An FBI agent testified at trial that when the cash was discovered in the suitcase shortly after petitioner's arrest, petitioner explained that the money was his life's savings accumulated from 20 years of hard work. (Trial transcript at 269). Petitioner denies having made the statement.

placed in an unfair situation because of reliance on the *Miranda* warnings.

Petitioner's situation is also unlike that of the appellant Garrett in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which petitioner cites for support. Garrett had been obliged to testify to incriminating facts at a pretrial hearing in an effort to have certain evidence suppressed, and that testimony was later used by the government in its case against Garrett. The petitioner here, by his own admission, chose not to reveal certain facts at the pretrial hearing, even though those facts might tend to exculpate him of the bank robbery charge. This failure to reveal facts was raised by the government on cross-examination at the trial only after petitioner had taken the stand and chosen to tell a story different from that which he had told at the pretrial hearing. Petitioner's credibility was appropriately impeached by the use of his earlier conflicting testimony. See *Harris v. New York,* 401 U.S. 222, 225–226, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

In light of the above, this court concludes as a matter of law that the record of petitioner's trial shows that he is not entitled to the requested relief. Petitioner's request for a hearing will be denied.

## THE ALIBI WITNESS

■ In an addendum to his original action, petitioner has alleged that his alibi witness, James Groomes, was also improperly impeached by "pretrial silence." Petitioner asserts that the *Doyle* ruling is applicable because witness Groomes, a suspected accomplice in the bank robbery, was advised of his Fifth Amendment rights during the course of his testimony at petitioner's trial. Groomes was then cross-examined as to why he had waited for nearly a year until the time of trial before coming forward with his alibi story as to petitioner's whereabouts on the day of the bank robbery.

In *Doyle,* Mr. Justice Powell stated specifically that the Court found it unnecessary to reach the issue of whether it was error for defendant Doyle, while testifying as a defense witness at a co-defendant's

trial, to be cross-examined as to his silence after receiving *Miranda* warnings at the time of his arrest. 426 U.S. at 616 footnote 6, 96 S.Ct. 2240. There is nothing in the record to indicate that Mr. Groomes was ever arrested for this bank robbery or that his silence before trial was possibly a post-arrest silence resulting from Groomes' reliance on *Miranda* warnings. However, even if the impeachment of witness Groomes somehow did violate Mr. Groomes' personal Fifth Amendment rights, petitioner Shadd may not claim it as error. *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 55, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *United States v. Skolek,* 474 F.2d 582, 584 (10th Cir. 1973); *Long v. United States,* 124 U.S.App. D.C. 14, 360 F.2d 829, 834 (opinion of Chief Justice, then Circuit Judge, Burger) (1966). Petitioner could expect that his alibi witness would be tested on cross-examination, under the accepted rules of evidence, just as any other witness. See 3A Wigmore, *Evidence* § 1042 (J. Chadbourne rev. 1970).

## MOTIONS FOR INJUNCTIVE RELIEF AND CHANGE OF VENUE

■ In connection with this action, petitioner has filed a motion for injunctive relief to prohibit any of the judges of the United States District Court for the Western District of Pennsylvania from sitting as judges in any action involving petitioner Harold George Shadd. Petitioner has also filed a motion for change of venue to the Eastern District of Pennsylvania or in the alternative to the Southern District of New York. Both of these motions are based upon petitioner's belief that the members of this court are highly prejudiced against the petitioner because of misinformation placed before the court by the government and

"because the above named court has issued false and misleading orders supporting the governments (sic) false and hypocritical position and is falsely claiming that petitioner is somehow abusing the writ of habeas corpus."

See "Petitioner's Traverse to the Government's Reply to Petitioner's Traverse," page one. Assuming the truth of the facts alleged, we believe that a reasonable person would not conclude that a personal as distinguished from a judicial bias exists. *Mims v. Shapp*, 541 F.2d 415, 417 (3rd Cir. 1976); *United States v. Thompson*, 483 F.2d 527, 528 (3rd Cir. 1973). The motions for injunctive relief and for change of venue will be denied.

## EXECUTION OF SEARCH WARRANT AND ARREST WARRANT

Finally, in the affidavits and briefs accompanying his petition and addendum, petitioner again challenges the constitutionality of the search of the house trailer in which he was living at the time of his arrest on January 25, 1972. Prior to trial, petitioner challenged the legality of this search in a motion for return of seized property. Subsequent to trial, petitioner has raised the Fourth Amendment issue in post-trial motions and in numerous previous actions under 28 U.S.C. § 2255 and under the civil rights laws.[6] He also has challenged the arrest and search warrants in the Court of Appeals for the Third Circuit (No. 74–1826, unpublished opinion filed March 27, 1975).

Petitioner's latest allegation, as described on page seven of his brief, is that when the FBI agents approached the trailer:

> "Shadd was in a loudly running shower down at the other end of the trailer from which 'all doors' are located on which [the FBI agent] knocked, and as Shadd did not hear the police outside the house, Shadd did not and could not have been aware of their presence and Shadd did not refuse admittance."

Petitioner demands a hearing to determine whether the officers violated the provisions of 18 U.S.C. § 3109. Such a hearing would serve no purpose since the record shows that the agents had a warrant for the arrest of petitioner and a warrant to search the trailer for a shotgun, a rifle, handguns and the stolen cash as well as ski masks, coveralls and denim laundry bags used in the bank robbery. The record also shows that the agent knocked loudly on the front and rear doors and called out to the petitioner: The agent then waited several minutes before opening the door and entering the trailer. If after knocking and calling to petitioner, the agent had reasonable cause to believe that the petitioner was inside the trailer, he could have made a determination that he was being refused entry and subsequently could have entered pursuant to the arrest warrant. Refusal of admittance need not be an affirmative act. It may be inferred from the action or inaction of the occupants. *United States v. Augello*, 368 F.2d 692, 694 (3rd Cir. 1966). If, on the other hand, after knocking and shouting, the agent had reasonable cause to believe that the petitioner was *not* inside the trailer, he still could have entered the trailer pursuant to the search warrant which properly could have been executed in the absence of the trailer's occupant. *United States v. Gervato*, 474 F.2d 40 (3rd Cir. 1973).

The constitutionality of this particular search has been reviewed previously and the record shows that petitioner is entitled to no relief. *Kaufman v. United States*, 394 U.S. 217, 227, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).

An appropriate order will be entered.

---

6. Petitioner has now filed at least seven habeas corpus actions and seven civil rights actions before this member of the court and other judges of the Western District of Pennsylvania. For a general review, see the opinion filed January 26, 1976 in Civil Action No. 75–1469.