**UNITED STATES of America**

v.

**Kenneth HATALA, Movant.**

**Criminal No. 1:95–CR–02–3.**

United States District Court,
N.D. West Virginia.

Dec. 21, 1998.

Kenneth M. Hatala, Atlanta, GA, pro se.

Paul T. Camilletti, Assistant U.S. Attorney, Wheeling, WV, for U.S.

*MEMORANDUM OPINION AND ORDER*

KEELEY, District Judge.

Kenneth Hatala was arrested on January 30, 1995 on a fifteen count indictment. After negotiations with the Government, he pled guilty to conspiring to distribute Dilaudid, 21 U.S.C. § 846 (Count 1). He was sentenced on November 3, 1995 to 210 months based partly on the Court's calculation that his relevant conduct comprised the distribution of more than 3200 Dilaudid. As stipulated in the plea agreement, at his sentencing the remaining charges against him were dismissed.

This civil action is before the Court on Hatala's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct that sentence. The Court notes that Hatala, a federal inmate, is acting *pro se*. For the reasons stated below, the motion is **DENIED**.

### I.

To Hatala it appears that little, if nothing at all, was done properly in his case; however, his motion can be reduced to one festering complaint: he has been sentenced for more drugs than he believes he is responsible. This, he asserts, is the direct consequence of a continuing pattern of inadequate assistance from his court appointed attorneys, beginning with the sentencing and on through to his direct appeal. He further contends that the inadequacies of his attorneys were further aggravated by judicial error during the sentencing phase. Also alleged is the violation of the plea agreement by the Government. As a consequence, Hatala seeks to be allowed to withdraw his guilty plea, or, at the very least, to be resentenced by the Court for a lesser and more accurate amount of Dilaudid.

### II.

The Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA) provides that a 2255 motion is governed by a one year statute of limitations. The AEDPA specifies four triggering events, each beginning a new one year period within which a federal inmate can bring a motion challenging judgment. The one year period of limitations runs of:

(A.) the date on which the judgment of conviction becomes final;

(B.) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(C.) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or,

(D.) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

### III.

### A.

The first issue before the Court is whether Hatala filed within the one year period provided by the AEDPA.

The United States Supreme Court denied his petition for writ of certiorari on May 30, 1997; therefore, judgment of conviction became final on that date and the one year limitations period was triggered. Hatala filed his motion attacking judgment with this Court on June 1, 1998, exactly one year and one day after the period of limitations took effect.

On its face, then, Hatala's motion is jurisdictionally out of time, and, normally, this would be fatal to his case. The courts, however, have viewed a petition filed by a *pro se* prisoner as unique and have tailored a different rule for the filing of motions for *pro se* prisoners.

In *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the United States Supreme Court held that *pro se* prisoners' notices of appeal are filed at the moment of delivery to prison authorities for forwarding to a district court. Justice Brennan, writing for the majority in *Houston,* gave this rationale for the holding, popularly termed the "mailbox rule":

> Unskilled in law, unaided by counsel, and unable to leave the prison, [the prisoner's] control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

487 U.S. at 271–272, 108 S.Ct. 2379 (1988).

It is worth noting that this exact scenario applies to Hatala's situation, except that here there is not even a precise record of when he gave his notice to prison authorities, because the United States Penitentiary at Atlanta, where he is incarcerated, does not log prisoner legal mail (thereby precluding knowledge of exactly when the motion was deposited with prison authorities). However, the record shows that Hatala signed his motion on May 20, 1998 and the envelope received by the Court is postmarked for May 21, 1998, making it is reasonable to assume, then, that on or before that day, Hatala deposited his motion with prison officials for forwarding to the Court.

## B.

■ The underlying question in the analysis of whether Hatala's motion is timely filed is whether *Houston's* "mailbox rule" applies to the filing of § 2255 motions by *pro se* prisoners. Although the Fourth Circuit has not yet decided this exact question, it extended the mailbox rule to state habeas motions in *Lewis v. Richmond City Police Dept.,* 947 F.2d 733 (4th Cir.1991), where it observed that *Houston* was concerned not with the technicalities of timely filing, but rather with the movant's situation as a prisoner coming before the courts *pro se.*

> Fundamentally, the rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome. It sets forth a bright line rule—that filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk.

> The concerns which prompted the Supreme Court's ruling in *Houston* are equally present in the case at hand. The litigants are similarly situated. Both are incarcerated pro se litigants who are unable to monitor the process of the mails as are other litigants.

*Lewis,* 947 F.2d at 735.

At the end of the day, if the mailbox rule is extended to the § 2255 motion at issue here the statutory one year period of limitation will in no way have been abused or undercut. "*Houston* does not create an exception by which incarcerated litigants may avoid time restrictions. It does not subvert the policies—those of speedy resolution and repose—which underlie the imposition of time limitations during which potential litigants may file suit." *Id.* at 736.

Indeed, the evidentiary problems that could arise if prisoners are forced to prove that their petitions were in some way delayed (deliberately or not) is one of the situations that *Houston* sought to prevent in the first place. Such problems, this Court believes, outweigh any benefit that could be gained by denying extension of the mailbox rule to § 2255 petitions. Resolution of this issue, and calculation of the one year period of limitations, thus, comes down to whether courts should focus on the amount of time strictly allotted for the filing of such motions, or on the prisoner's status as a *pro se* inmate not fully able to remedy a delay in the filing of a motion.

Recently, the Third Circuit had this exact issue before it and applied *Houston's* rationale to § 2255 motions, noting that "at least one court [the Sixth Circuit] has applied *Houston* to a motion ... to file a second or successive § 2255 motion." *Burns v. Morton,* 134 F.3d 109, 112 (3rd Cir.1998), *citing In re Sims* 111 F.3d 45 (6th Cir.1997).

In *Burns,* the court concluded that, as in other situations where *Houston's* rule has

been applied, a § 2255 movant "remains entirely at the mercy of prison officials." *Burns*, 134 F.3d at 113.

A *pro se* prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court because ... we see no reason why federal prisoners should not benefit from any such rule, and for the purposes of clarity and uniformity, we extend this holding to the filing of motions under § 2255. *Id.*

At least one district court in the Fourth Circuit has applied the mailbox rule to § 2255 prisoner litigation. In *United States v. Dorsey*, 988 F.Supp. 917 (D.Md.1998), Judge Legg had to decide whether the mailbox rule established by *Houston* applied to § 2255 motions. Holding that it did, he treated the motion "as filed when it was delivered to prison authorities for forwarding by depositing it in the prison mailbox," *id.* at 920, and further noted that "the Fourth Circuit has consistently applied the 'mailbox rule' to its cases involving *pro se* prisoner litigation." *Id.*, at 919.[1]

 Based on the foregoing analysis, the Court holds that the mailbox rule should be extended to § 2255 motions. As a result, it finds that, on May 21, 1998, Hatala timely filed his motion within the one year period of limitations provided by the Antiterrorism and Effective Death Penalty Act of 1996.

## IV.

### A.

In his § 2255 motion, Hatala alleges that numerous mistakes were made by the Government, defense counsel, the Probation Office, and also the Court during his sentencing. Specifically, he claims that the Government breached the plea agreement by attributing more drugs to him as relevant conduct than is his responsibility under the Sentencing Guidelines; that the Probation Officer colluded with the Government in this breach; that his court appointed attorneys failed to identify this breach and did not adequately challenge the quantity of drugs charged as relevant

conduct; and that the Court failed to fully inform him about the nature of his plea.

Section 2255 establishes four grounds for relief:

(1) the sentence was imposed in violation of the Constitution or laws of the United States;

(2) the court was without jurisdiction to impose the sentence;

(3) the sentence was in excess of the maximum authorized by law; or

(4) the sentence is otherwise subject to collateral attack.

 Critical to this analysis is the precept that an issue raised and decided on direct appeal precludes review in a collateral proceeding. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir.1976), *cert. denied*, 429 U.S. 863, 97 S.Ct. 169, 50 L.Ed.2d 142 (1976). The Supreme Court has mentioned examples of some instances where it might be appropriate to raise issues during collateral attack previously decided on appeal, such as cases in which the law had changed since the direct appeal was decided, where new facts had been discovered in support of the claim, or where the movant had been denied the right to a full and fair hearing on direct review. *Kaufman v. United States*, 394 U.S. 217, 230–31, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). None of these scenarios apply to Hatala's motion, however, for he has exhausted his appellate rights.

Since an issue raised and decided on direct appeal may not be raised again in a collateral proceeding, the only issue which clearly belongs before the Court is Hatala's charge that he was inadequately represented by his court appointed attorneys. In actuality then, Hatala seeks collateral review of his claim of ineffective assistance of counsel.

### B.

The Sixth Amendment right to counsel is the right to the effective assistance of counsel, and the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined

---

1. In the case of *Washington v. Bumgarner*, 882 F.2d 899 (4th Cir.1989), Judge Murnaghan, writing in dissent in another context, touched upon the equitable issue that has concerned the courts that have confronted the question in § 2255 litigation.

the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984).

A defendant's claim of ineffective assistance of counsel must first show deficient performance, and second, that the deficient performance deprived the defendant of a fair trial. *Id.* at 687, 104 S.Ct. 2052. The defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688, 104 S.Ct. 2052. Furthermore, the defendant must show that were it not for counsel's errors, it is reasonably probable that the result of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The burden of proof is on the defendant to make such a showing, and *Strickland* instructs that a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 690, 104 S.Ct. 2052.

Hatala contends that his trial attorney, George F. Fordham, failed to challenge the amount of Dilaudid for which Hatala was found responsible within the conspiracy, failed to challenge the Government's evidence supporting that amount, failed to challenge the two-level enhancement for his role in the offense, and failed to advise him of the elements of the charge in the plea.

Even a cursory reading of the plea and sentencing hearing transcripts reveals that Fordham did, indeed, orally and by written objection, challenge the amount of Dilaudid included in the Presentence Report, as well as the evidence provided in support of that amount and the two-level enhancement for a leadership role in the offense. Assistance of counsel was so far from being inadequate that when counsel mentioned to the Court that he felt that the "special relationship" between himself and his client might be in jeopardy, the Court noted on record how aggressive an advocate Fordham had been.

The court transcripts also disclose that Hatala answered in the affirmative every time he was asked by the Court if he understood the proceedings and their import,

and he was instructed to interrupt the proceedings if at any time if he did not understand, or if he wished to consult with his attorney. The record is void of anything which could be construed as inadequate assistance on the part of Hatala's trial counsel.

The next complaint is that Hatala's appellate attorney, C. Cooper Fulton, also failed to properly challenge the relevant conduct attributed to him, failed to address the amount of Dilaudid involved in the plea, and failed to challenge the two-level enhancement for role in the offense. Again, nothing in the record provided to the Court with the § 2255 motion in any way demonstrates that Fulton's actions were inadequate.

## V.

"[I]f the allegations made in the [§ 2255] motion are *conclusively refuted* by the record, then summary dismissal is appropriate." *Moore's Federal Practice 3rd,* 28 Ch 672–46 (emphasis added). Hatala has failed to establish that there is a reasonable probability that but for the ineffectiveness of his attorneys the results of the proceedings would have been different; nor has he shown why confidence in the outcome of his conviction has been undermined.

For the foregoing reasons, the defendant's § 2255 motion is **DENIED.**

It is so **ORDERED.**

Judgment shall be entered accordingly, and this action **DISMISSED** WITH PREJUDICE and removed from the docket of the Court.