**UNITED STATES of America**

v.

**Harold George SHADD.**

**Civ. A. No. 79–210; Crim. A. No. 72–34.**

United States District Court,
W. D. Pennsylvania.

March 29, 1979.

---

at 151.

**80**

Harold George Shadd, pro se.

Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

MARSH, District Judge.

Defendant Harold George Shadd has filed this motion pursuant to 28 U.S.C. § 2255 challenging his conviction on November 15, 1972, for armed bank robbery. Defendant was sentenced to 15 years in prison and fined $5,000. He was released from prison more than two years ago, but remains on parole at this time. The instant motion seeks to vacate the sentence alleging that defendant did not receive a fair trial because his Sixth Amendment right to effective assistance of counsel was violated.

Considering that it has been more than six years since defendant's trial, a general review of the proceedings is appropriate.

The indictment filed at Criminal No. 72–34 charged the defendant with robbing more than $83,000 from the Clarion Office of the Northwest Pennsylvania Bank and Trust Company on November 19, 1971. At the trial, six bank employees testified that two men entered the bank at about 6:25 p. m. wearing coveralls and ski masks. The larger man carried a shotgun, wore glasses under the mask, walked in a distinctive manner, and had grey hair sticking out of the mask.[1] The tellers were ordered to place money in laundry bags and the two men then fled with the bags.

Three other government witnesses testified to their efforts to pull the defendant's car out of a ditch between 7:30 and 9:00 p. m. on November 19, 1971, about 30 miles northeast of Clarion. The defendant and his witness, James Groomes, Jr., later corroborated the government's testimony. They testified they had been spotting deer when the defendant thought he saw a rabbit on the road. He applied his brakes and skidded into the ditch.

Both government and defense witnesses testified that the defendant and his witness, Groomes, were later stopped for speeding by Pennsylvania State Police troopers during the early morning hours of November 20, 1971, on Pennsylvania Route 711, south of Ligonier, in the vicinity of the defendant's home. When the troopers asked if they could look in the defendant's trunk, he told them it contained only luggage from his deer spotting trip in Potter County. He was unable to find the key and told the officers his wife must have it.

The government further offered testimony that although the defendant had been on public assistance from January 19, 1971, until October 1, 1971, he had paid almost $15,000 for two Chrysler Imperials in December, 1971, and had given the car salesman an additional $10,000 in cash to establish his credit; that in January, 1972, the defendant paid for gas at a gas station near his home with a $20 bill which was one of the bait bills taken from the bank during the robbery; and, that at the time of the defendant's arrest on January 25, 1972, a complete package of $20 bills in bait money from the bank was found in a suitcase in a closet of the defendant's mobile home, together with other packages of bills, totalling $15,568.

The defendant and Groomes testified they had been spotting deer on November 19, 1971; that they had been pulled out of

---

1. The jury had an opportunity to observe the defendant throughout the trial. Defendant described his own appearance at trial in a previous brief:

    "The defendant, a portly man, heavy and rotund with a protruding belly that shook like the proverbial bowl full of jelly, shuffled to the witness chair. His hair was long and grey but neatly trimmed and the full grey beard he sported highlighted rosy cheeks."

the ditch by Mr. Hill, a government witness; that they had been stopped by the State Police on Route 711; that they had not been in Clarion; and, that the defendant had not robbed the bank.

On November 15, 1972, the jury returned a verdict of guilty and sentence was imposed. The conviction was affirmed on June 12, 1973 (No. 72–2078). On June 28, 1973, after an evidentiary hearing, this court denied the defendant's application for a new trial based on newly discovered evidence. This denial was affirmed on appeal (No. 73–1696, November 29, 1973).

Following his conviction, the defendant was no stranger to this court. He challenged various aspects of the proceedings in numerous motions to vacate sentence and petitions for habeas corpus relief. He also filed numerous civil rights actions.

See: Civil Action No. 73–589, filed July 16, 1973

Civil Action No. 73–1028, filed December 3, 1973

Civil Action No. 73–1096, filed December 28, 1973

Civil Action No. 74–566, filed June 12, 1974

Civil Action No. 74–567, filed June 12, 1974

Civil Action No. 74–644, filed July 1, 1974

Civil Action No. 74–677, filed July 12, 1974

Civil Action No. 74–726, filed July 31, 1974

Civil Action No. 74–943, filed October 3, 1974

Civil Action No. 74–976, filed October 11, 1974

Civil Action No. 74–1117, filed November 15, 1974

Civil Action No. 75–316, filed March 14, 1975

Civil Action No. 75–329, filed March 18, 1975

Civil Action No. 75–928, filed July 30, 1975

Civil Action No. 75–952, filed July 31, 1975

Civil Action No. 75–988, filed August 8, 1975

Miscellaneous No. 6297, filed August 8, 1975

Civil Action No. 75–1469, filed November 13, 1975

Miscellaneous No. 6393, filed January 14, 1976

Civil Action No. 76–732, filed May 28, 1976

Civil Action No. 76–847, filed June 28, 1976

Civil Action No. 76–963, filed July 26, 1976

Civil Action No. 77–1450, filed December 28, 1977

Civil Action No. 78–689, filed June 19, 1978

Civil Action No. 78–1257, filed November 2, 1978.

The instant action was filed February 13, 1979, when the court granted defendant's request for leave to proceed in forma pauperis.[2] In his motion, defendant has set forth approximately 33 claims of ineffective assistance of counsel. The government has filed a response seeking dismissal of defendant's action on the grounds that defendant has previously alleged inadequate assistance

---

2. In ruling on defendant's request for leave to proceed in forma pauperis, the court gave no consideration to the statements made by the defendant on December 14, 1978, when he testified under oath in his role as Bishop of the Church of the Good Samaritan:

"Your Honor, James Groomes and I have been friends for quite a long time and during the course of our many discussions, we got off on to the question of religion and politics and different things. We decided that both of us were getting on in years and we wanted to do something to help other people. *We have enough coming in off our pensions to live on comfortably for the rest of our lives.* . . . [W]e have both found that when we have helped others in our past life that helped us; some how or other it comes back to us later on in life." (emphasis supplied) See Tr. at 24–25. Civil Action No. 78–1395.

and that this latest collateral attack constitutes an abuse of legal process. Defendant has supplemented his initial pleadings. In his "Objections and Traverse to the Government's So-Called Response and the Government's Frivolous Motion to Dismiss . .," defendant denies that he has abused the judicial process and asserts that this motion "does not contain the exact same issues . . . that were presented to this court in any prior actions, if any." (p. 9)

A review of defendant's pleadings reveals essentially that in this action defendant has reformulated numerous issues which have been raised previously as alleged trial errors. For example, defendant asserts that his attorneys

> "were totally inefficient and ineffective and incompetent because without objections they permitted the government prosecutors in Cr. No. 72–34 to impeach defendant Shadd with his pretrial silence about his boot-legging alibi."

The record demonstrates that in a previous motion to vacate (Civil Action No. 76–847), defendant unsuccessfully argued that his testimony at trial was impeached improperly by the use of his pretrial silence. See *Shadd v. United States*, 423 F.Supp. 511 (W.D.Pa.1976). Furthermore, the claim of ineffective assistance in this regard is utterly untrue. The trial transcript shows that defendant's counsel did in fact object to the impeachment.

Defendant's other assertions of ineffective assistance of counsel are similarly without basis. Defendant claims that his attorneys:

> "ineffectively failed to file any pretrial motions to suppress tangible evidence (i. e. guns, money) which they knew to have been illegally seized in violation of the United States Constitution."

To the contrary, the record reveals that defense counsel filed a motion seeking return of the firearms and the $15,568 in cash which were found on January 25, 1972, in defendant's home.[3]

The court assumes that these factual misstatements in defendant's motion flow from a fading memory rather than an abusive heart. Nevertheless, this delayed challenge to the competency of counsel must fail because the very issue of ineffective assistance has been raised and determined previously. On December 28, 1973, the defendant filed a petition challenging his bank robbery conviction. Thereafter, defendant was permitted additional time to set forth all grounds on which he believed he was entitled to relief. Among the many issues raised in that action was defendant's contention that he was represented by incompetent, ineffective and inefficient attorneys. The court concluded that defense counsel acted diligently and competently in representing defendant at all stages of the proceedings. See Civil Action No. 73–1096, affirmed on appeal at No. 74–1826.

Accordingly, defendant's motion to vacate will be dismissed pursuant to Rule 9(b), Rules Governing Section 2255 Proceedings.

---

**3.** Defendant previously has raised Fourth Amendment issues with respect to this search in several post-conviction actions.