UNITED STATES of America, Plaintiff,

v.

Eugene CHANEY, Jr., Defendant.

No. 83–CR–61.

United States District Court,
E.D. Wisconsin.

Dec. 9, 1983.

Jan Kearney, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

William S. Wiener, Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court are three post-sentencing motions filed by the defendant in this case, all in support of his efforts to appeal the conviction and sentence imposed by this Court on August 12, 1983, following defendant's plea of guilty. Principally because the Court opines that there should be a colorable claim of innocence on all appeals and for the additional substantive and procedural reasons stated herein, the Court declines to grant the defendant's motions for an enlargement of time in which to file a notice of appeal, for appointment of counsel, and for leave to proceed on appeal in forma pauperis.

## BACKGROUND

On April 26, 1983, defendant and movant was charged in a one-count indictment with stealing $3,005.00 from the FDIC-insured Citizens North Shore Bank, in violation of 18 U.S.C. Sections 2(a) and 2113(b). As the case was proceeding to trial, the defendant, through his attorney, William S. Weiner, advised the Court on June 22, 1983, that he wished to plead guilty to the offense charged in the indictment. On June 28, 1983, the Court ordered a presentence report and scheduled a hearing on defend-

ant's change of plea and sentence for August 4, 1983.

At that hearing, the Government recited for the record the terms of the plea agreement, pursuant to which the defendant pled guilty to the one count in the indictment.[1] Consistent with its standard practice, the Court then asked defendant a series of questions to ensure that he was competent, that his plea was free and voluntary, that he understood the charges and penalties he faced, and that there was a factual basis for his plea. In this context, the defendant was placed under oath, and, in response to questions posed by the Government, defense counsel, and the Court regarding his involvement in the robbery of the Citizens North Shore Bank on June 7, 1982, the defendant indicated that he had no knowledge of the robbery until shortly after it had occurred.

Although the Court declined to characterize the defendant's testimony in this regard as a repudiation of the factual basis for his plea, the Court did conclude that it raised a question of defendant's willfulness and intent sufficient to suspend the hearing pending the defendant's further consultation with his attorney with respect to the propriety of his guilty plea. Accordingly, the Court held the matter over until August 12, 1983, at which time the defendant's change of plea was again taken up.

As a preliminary matter during that second hearing, defendant's attorney, Milton I. Bordow, advised the Court as follows:

... [P]ursuant to the Court's instructions and after the events that took place that last Friday, I contacted the U.S. Attorney's office and received some material from her relative to this matter and then yesterday afternoon went to Waukesha and conferred with my client. At that time he advised me that the position he had taken on the stand was the same and that the allegations that he made relative to his non-scienter of the

events prior to his becoming involved was the truth. I then advised him that if that was so, I was going to advise the Court that I was going to request that I be permitted to withdraw and that he ask for a jury trial and probably counsel would be appointed for him. As I sat here this morning, after reading the probation report, Mr. Chaney walked into the courtroom and stated to me what I said on the stand was not what happened. I wish to go ahead with my guilty plea and that's where the posture of the matter is at the present time.

Transcript of Proceedings at 3. Thereafter, the defendant, in response to questions asked of him by his attorney, admitted that the statements he made at the hearing of August 4, 1983, regarding his prior knowledge of the bank robbery were, in fact, false—an admission he made explicitly and implicitly throughout the hearing. Following the Government's cross-examination of the defendant regarding his involvement in the robbery, for example, the following colloquy took place:

THE COURT: Do you understand what the government is saying, saying you not only assisted in the get away but you knew about it before it went down, as they say?

THE DEFENDANT: Yes.

THE COURT: And that is the truth, is it?

THE DEFENDANT: Yes.

THE COURT: What made you change your mind from yesterday until today?

THE DEFENDANT: Well, I figure if I tried to fight it like that I would, I am pretty sure I would lose. I just want to get it all over with today.

THE COURT: All right.

Transcript at 8–9; *see also* Transcript at 5–6, and 11.

The Court then asked the defendant a series of questions designed to ensure that he was competent to plead guilty to the

---

1. Before taking the plea, the Court excused Attorney Weiner from further representation of the defendant for good cause shown. Mr. Milton I. Bordow, appearing as substitute counsel, was then granted leave to represent defendant throughout the remainder of the proceedings. The defendant advised the Court that he had approved this substitution.

alleged offense and that, in so doing, defendant was knowingly waiving his right to trial by jury and to court-appointed counsel if he was dissatisfied with Mr. Bordow's representation of him. Transcript at 12–14. Based on the defendant's answers to those questions and to the questions posed earlier by the Government and defense counsel, the Court announced its decision as follows:

> ... [L]et the record show that the Court is satisfied that on the total record here, even though there has been a substitution of counsel and even though there appears to have been some uncertainty of the defendant's part as to whether he really wished to proceed with his plea bargain and during the interim from August 4 until today and perhaps even up until this very moment I think that the record abundantly demonstrates that he now has decided that he wants to go ahead and follow through on his plea of guilty and the Court is further satisfied that it's a decision that is knowledgeable and voluntary and made in the light of considerable experience with court proceedings, as his record would indicate and so the Court is going to accept the plea of guilty and I do adjudge you then, Eugene Chaney, guilty as charged on Count One of the indictment on file herein ....

Transcript at 15–16.

Thereafter, the Court afforded the defendant his right of allocution, solicited additional comments from his attorney and the Government regarding the appropriate sentence to be imposed, and asked defendant several additional questions regarding his family situation and another offense for which he is currently serving time at the Dodge Correctional Institute. The Court then sentenced the defendant to a five-year term of imprisonment, to be served concurrently with the sentence he is now serving

at the Correctional Institute in Waupun, Wisconsin.[2]

On September 9, 1983, 28 days after sentencing, the defendant filed the present motions for enlargement of time in which to file a notice of appeal, for appointment of counsel, and for leave to proceed on appeal in forma pauperis. Appended to these motions were defendant's affidavit of indigency and an affidavit in support of his motion for enlargement of time. By its letter of September 20, 1983, the Government advised that, in view of the defendant's attempts to secure counsel, it would not oppose his request for an extension of time in which to file an appeal.

### Rule 4(b) and Defendant's Motion For An Extension of Time

Rule 4(b) of the Federal Rules of Appellate Procedure provides, in pertinent part, as follows:

> In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. ... A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket. Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

Although the Rule allows the Court to extend the defendant's time for filing a notice of appeal, it also restricts the permissible extension to a period "not to exceed 30

---

**2.** As a result of a clerical error, defendant's sentence was inaccurately transcribed on the order of judgment and commitment as a five-year term "to be served *consecutively* to the sentence the defendant is now serving ...." Judgment and Commitment Order of August 12, 1983 (emphasis added). The order was amended on October 4, 1983, to reflect the fact that the defendant had been sentenced to a *concurrent* term. Amended Judgment and Commitment Order of October 4, 1983.

days" beyond the ten days normally allowed; indeed, an order of extension exceeding the specified 30-day period is a nullity, and a court of appeals has no jurisdiction to hear an appeal based on a notice filed pursuant to such an unauthorized period of extension. *Smith v. United States*, 425 F.2d 173, 174 (9th Cir.1970); *cf., Crumpton v. United States*, 496 F.Supp. 774, 776–777 (C.D.Cal.1980) (failure to file notice of appeal, followed by failure to file timely motion for extension, extinguishes right to appeal beyond revival). In other words, after the expiration of 40 days from the entry of final judgment, there is nothing either the sentencing court or the court of appeals can do to extend the time for filing a notice of appeal. *United States v. June*, 503 F.2d 442, 443–444 (8th Cir.1974); *see also United States v. Avery*, 658 F.2d 759, 761 (10th Cir.1981) (40-day period begins when order denying new trial is issued rather than when motion for enlargement of time in which to appeal is filed).

▪ Even when such a motion is timely filed, it cannot be granted by the district court absent a finding of "excusable neglect." *See United States v. Dabney*, 393 F.Supp. 529, 552 (E.D.Pa.1975); *Lacob v. United States*, 59 F.R.D. 329, 331 (N.D.Ill. 1973). In the civil context, whether neglect in failing to file a timely notice of appeal is excusable is generally said to depend on the facts of the particular case, and leave to file under this standard is typically granted only in extraordinary circumstances where injustice would otherwise result. *Gooch v. Skelly Oil Company*, 493 F.2d 366, 369 (10th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *USM Corporation v. GKN Fasteners, Ltd*, 578 F.2d 21, 22 (1st Cir.1978). A similarly high threshold is suggested by those criminal cases in which excusable neglect is found sufficient to warrant an extension of time. *See, e.g., United States v. Thrower*, 431 F.Supp. 892, 894 (E.D.Pa.1977) (counsel's confusion arising out of simultaneous handling of two criminal cases similar in nature supports finding of excusable neglect in failure to file notice of appeal in one of them); *United States v. Dabney*, 393 F.Supp. 529, 552 (E.D.Pa.1975) (excusable neglect shown where sole practitioner is stricken with sudden illness, preventing him from filing timely notice until day he returns to work.)

▪ Finally, the district court's finding as to the presence or absence of excusable neglect is reversible on appeal only if there has been a clear abuse of the lower court's discretion, *United States v. Myers*, 692 F.2d 861, 863 (2d Cir.1982), and the court of appeals will normally accord great deference to the district court's ruling in this regard. *United States v. Ferrer*, 613 F.2d 1188, 1191 (1st Cir.1980).

In support of his present motion, filed just 12 days before the expiration of the 40-day period allowable under Fed.R. App.P. 4(b), the defendant argues that on the day of sentencing, he "desired an appeal or other post-conviction relief"; that neither his attorney nor the Court advised him of the proper procedures for securing such an appeal; [3] that he nonetheless un-

---

3. The defendant also hints in paragraphs 3, 4, & 5 of his motion and in paragraphs 3 & 4 of his supporting affidavit that he was not satisfied with his representation by Mr. Bordow at the time of sentencing. *See* Footnote 1. While the defendant did suggest, during the August 12, 1983, hearing, that Mr. Bordow was not "really interested in the case," Transcript at 10, the defendant was given several opportunities to ask for the appointment of replacement counsel but repeatedly declined to make such a request. The following exchange, quoted at length, is illustrative:

THE COURT [to the Defendant]: ... [D]o you understand that if you felt that you wanted to contest this charge and ask for the appointment of an attorney, the Court would have to appoint an attorney for you and you would be entitled to go through a trial?

Now your prior answers to my question's [sic] indicated that you thought about that and decided there wouldn't be any point in it.

A: No.

THE COURT: Is that correct?

A: Yes.

THE COURT: But you do understand that if you did want to go to trial, but even though you feel that Mr. Bordow might not be interested in the case that you would be entitled to another attorney?

A: Yes.

dertook "affirmative steps to try and secure the appeal" by contacting the Office of the State Public Defender about appealing his conviction and sentence and by enlisting the paralegal assistance of the library staff at the Dodge Correctional Institute in this regard; and that the relief he seeks is "necessary to 'correct a manifest injustice.'" Defendant's Motion for Enlargement of Time, September 9, 1983. Defendant declines to advise the Court of the nature of this manifest injustice for two reasons—first, because his layman status prevents him from explaining it properly and, second, because he wishes "to protect his interests and only tell the information supporting the claim of manifest injustice to his lawyer once appointed." Defendant's Motion at 2.

At the outset, the Court opines that if the defendant did indeed desire some form of post-conviction relief on the day of sentencing, he surely had adequate opportunity to so advise the Court during the course of the hearing. In fact, the record is replete with exchanges in which the defendant indicated no misgivings as to the procedural or substantive adequacy of the hearing or as to his stated intention to proceed with his guilty plea. The following colloquy between the Government and the defendant is illustrative:

> THE COURT: Did you make your judgment that you didn't want to go through the trial with that knowledge in mind that you could get another attorney?
> A: Yes.
> THE COURT: Okay, everybody content?
> MS. KEARNEY [for the Government]: Your Honor, just one more small thing, in fact he would have the right to another, to another attorney if he needed one regardless of whether the matter actually did go to trial. In other words, if Mr. Bordow withdrew, he could ask the Court for another attorney at this time for a complete re-evaluation of the case if he thought that was called for.
> THE COURT: That is a question.
> MS. KEARNEY: Is that the Court's position, first of all, I want to be sure that's correct.
> THE COURT: Oh sure, you understand that, don't you?
> A: Yes.
> THE COURT: It really doesn't make any difference whether you go to trial or not, if you said I want another attorney and Mr.

Q. Do you feel that you have an understanding about the nature of the right's [sic] that have been explained to you by the Court and by Mr. Bordow and of the proceedings that are occurring in the Court today?

A Yes.

Q And it is on that basis that you are willing to go ahead and enter into a plea agreement that we, that the Court has been talking about this morning?

A Yes.

Transcript at 11. *See also* Transcript at 5, 8–9, 10, & 18. Indeed, had the defendant at any time during the proceeding advised of his intention to appeal, the Court would have promptly adjourned the hearing and ordered further consultation between defendant and his attorney regarding the former's desire to plead guilty pursuant to the agreement or to go to trial on the alleged offense.

■ As it was, the Court could only assume that the defendant's assurances that he was voluntarily entering his plea and knowingly waiving his right to a jury trial accurately represented his state of mind at the time of the hearing. Moreover, the Court knows of no authority—statutory or otherwise—that requires a district court

> Bordow doesn't want to withdraw today, then I would appoint another attorney even though you might wind up pleading guilty, you understand that?
> A: Yes.
> THE COURT: Okay.
> MS. KEARNEY: I have no further questions, Your Honor. Thank you.
> MR. BORDOW: Maybe then with that perjorative [sic], I should ask him whether or not he would feel more comfortable if at the time of sentencing he had another attorney to talk to and go over the matter with and I would gracefully withdraw right now with the Court's permission.
> THE COURT: Do you want another attorney?
> A: No, he will be okay.
> · THE COURT: Pardon?
> A: He will be all right. I would like to get it over with today.

Transcript at 12–14. *See also* Transcript at 9 & 10.

judge to advise a criminal defendant, who has pled guilty to an alleged offense and has indicated a willingness to be sentenced forthwith, of the proper procedures for filing an appeal to the circuit court. Rule 11(c) of the Federal Rules of Criminal Procedure includes no such prerequisite, and the case law and commentary that the Court has reviewed in this regard fail to lend any support to defendant's position.[4]

■ Likewise, the defendant's initially unsuccessful albeit conscientious attempts at securing the proper legal advice to file his appeal do not, in the Court's view, constitute sufficient excusable neglect to justify granting his Rule 4(b) motion. While the Court is ever-mindful of the peculiar problems facing pro se criminal petitioners, it does not view the delays occasioned by the defendant's communication with the State Public Defender or his inability to secure immediate access to the legal materials in the Correctional Institute's library as so extraordinary as to justify an enlargement of time in which to file an appeal. Rather, they appear to be the predictable delays incident upon a criminal defendant's incarceration following his voluntary plea of guilty and sentencing by the district court judge.

■ Although it is unlikely, given the painstaking efforts the Court undertook to ensure that defendant's plea was made competently, voluntarily, and with full knowledge of all rights under the law, it may be that the defendant still harbors some special insight into either the offense to which he pled guilty or the proceeding at which he was sentenced—an insight which would support his claim of "manifest injustice" and bring his present motion within the clear ambit of Rule 4(b). Whatever the nature of the injustice defendant feels he has suffered, however, the Court cannot grant a request for an extension of time on the unsupported claim that such relief is necessary to remedy some procedural or substantive wrong about which it knows nothing. Such an order would be particularly inappropriate where, as here, all evidence suggests that the defendant's rights were sufficiently safeguarded during the hearing on his change of plea and sentence.

■ Finally, the Court notes that today's decision, issued 119 days after sentencing, comes 79 days after the statutorily-prescribed time period during which the defendant would have been able to file a notice of appeal, had the Court otherwise granted him an extension of time in which to do so. *See* Fed.R.App.P. 4(b). While the Court regrets that its busy calendar has prevented it from resolving this and defendant's related motions at an earlier date, it also observes that the defendant, having filed his Rule 4(b) motion just twelve days prior to the expiration of the 40-day period, afforded the Court little time in which to secure a response from the Government and to consider the merits of the request before losing jurisdiction. Answering with dispatch the Court's request for a statement of position, the Government submitted its letter brief on September 20, 1983, just 11 days after defendant's motions were filed but unfortunately only one day prior to the expiration of the 40-day time limitation. Thus, even if the Court had immediately granted the defendant the extension he now seeks, it is unlikely that defendant would have successfully filed his notice of appeal in a timely fashion.

Today, some 79 days after losing its power to grant extensions under Rule 4(b), see *United States v. June*, 503 F.2d 442, 443–444 (8th Cir.1974), the Court must conclude that, if it did not deny defendant's motion on its merits, it would be forced to do so on jurisdictional grounds.

*Defendant's Motions For Appointment of Counsel and For Leave to Proceed In Forma Pauperis*

Pursuant to 18 U.S.C. Section 3006A(b), the Court is obliged to appoint counsel for

---

4. Rule 32(a)(2) of the Federal Rules of Criminal Procedure establishes the defendant's right to be advised at the time of sentencing of his right to appeal and to proceed on appeal in forma pauperis only in cases which have gone to trial on pleas of not guilty. *See also* The Advisory Committee Notes to the 1966 Amendment to Subdivision (a)(2).

all criminal defendants financially unable to retain attorneys themselves and who do not otherwise waive their right to court-appointed counsel. Under subsection (c) of that statute, a defendant for whom counsel is appointed "shall be represented at every stage of the proceedings from his initial appearance before ... the court through appeal, including ancillary matters appropriate to the proceedings." 18 U.S.C. Section 3006A(c). *See also* Fed.R.Crim.P. 44(a).

The central purpose of the Criminal Justice Act of 1964, 18 U.S.C. Section 3006A, is to ensure adequate legal representation to defendants otherwise unable to employ counsel and to ensure that experienced and capable members of the bar could be called upon without causing undue financial sacrifice. *United States v. Rountree*, 254 F.Supp. 1009, 1011 (S.D.N.Y.1966); *United States v. Owens*, 256 F.Supp. 861, 863 (W.D.Pa.1966). Under subsection (j) of the statute, attorneys appointed to represent indigent criminal defendants are compensated from funds "appropriated to the United States courts, out of any money in the Treasury not otherwise appropriated...." 18 U.S.C. Section 3006A(j); *see also* 45 Op.Comp.Gen. 785 (1966).

Frequently invoked in tandem with section 3006A is 28 U.S.C. Section 1915, which, among other things, permits the Court to authorize a criminal appeal "without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor." 28 U.S.C. Section 1915(a). Promulgated pursuant to Section 1915, Rule 24(a) of the Federal Rules of Appellate Procedure prescribes the means by which a party such as the present defendant may request leave to proceed on appeal in forma pauperis, including the requirement that he provide the Court with a statement of issues that he intends to present on appeal. Fed.R.App.P. 24(a).

While the district court has wide discretion under both the statute and the rule to grant or deny such petitions, *Cole v. Smith*, 344 F.2d 721, 723 (8th Cir.1965), it is generally held that a motion for leave to proceed in forma pauperis should be denied when it is apparent that the evidence was sufficient to sustain a conviction as a matter of law. *United States v. Maines*, 462 F.Supp. 15, 17–18 (E.D.Tenn.1977); *cf.*, *United States v. Fletcher*, 483 F.Supp. 879, 879–880 (E.D.Tenn.1978), *aff'd without opinion*, 601 F.2d 591 (6th Cir.), *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979).

In support of his motion for appointment of counsel, defendant argues that he is "entitled to redress under 28 U.S.C. Section 2255 [habeas corpus for federal prisoners] and/or other remedies that only counsel would be formilar [sic] with ..." and that his request is made to remedy a "manifest injustice." Defendant's Motion of September 9, 1983.[5] He has also attached, in support of both this motion and his request for leave to proceed in forma pauperis, an affidavit of indigency.

■ Because the Court today denies the defendant's motion for an enlargement of time pursuant to Fed.R.App.P. 4(a)—a decision that effectively prevents defendant's appeal of his conviction and sentence—the Court addresses his related motions in summary fashion only. First, it is apparent from his affidavit that the defendant is, indeed, indigent—a prerequisite to any request under either 18 U.S.C. Section 3006A or 28 U.S.C. Section 1915. *See United States v. Chavis*, 476 F.2d 1137, 1141, *on rehearing*, 486 F.2d 1290 (D.C.Cir.1973); *Evensky v. Wright*, 45 F.R.D. 506, 508–509 (N.D.Miss.1968). Having met this threshold test, however, defendant has failed to adduce sufficient evidence to convince the Court that he should be allowed to appeal at the taxpayers' expense. More to the

---

**5.** The defendant's reference to remedies available under the federal habeas corpus statute, 28 U.S.C. Section 2255, suggests that his present efforts to appeal to the circuit court may be premature, if the relief he seeks is obtainable under Section 2255. Whatever the nature of defendant's theory underlying his efforts at post-conviction relief, today's order goes no further than to deny the motions aimed at perfecting an appeal.

point, this Court today declines to provide the means for appellate attack on a conviction based on the free and voluntary admission of guilt by the defendant himself.

Underlying the Court's hostility to motions such as these is its growing belief in the necessity of some colorable claim of innocence on all appeals. In other contexts, this notion is attracting disciples—including several members of the United States Supreme Court. For example, in his concurring opinion in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, *on remand*, 479 F.2d 1047 (9th Cir.1973), in which both the Chief Justice and Justice Rehnquist joined, Justice Powell lamented the judicial extension of habeas corpus beyond its historic bounds and in wholesale disregard of the writ's central purpose—that is, to afford a means of redressing an *unjust* incarceration:

Habeas corpus review of search and seizure claims thus brings a deficiency of our system of criminal justice into sharp focus: a convicted defendant asserting no constitutional claim bearing on innocence and relying solely on an alleged unlawful search, is now entitled to federal habeas review of state conviction and the likelihood of release if the reviewing court concludes that the search was unlawful. That federal courts would actually redetermine constitutional claims bearing no relation to the prisoner's innocence with the possibility of releasing him from custody if the search is held unlawful not only defeats our societal interest in a rational legal system but serves no compensating ends of personal justice....

No effective judicial system can afford to concede the continuing theoretical possibility that there is error in every trial and that every incarceration is unfounded. At some point the law must convey to those in custody that a wrong has been committed, that consequent punishment has been imposed, that one should no longer look back with the view to resurrecting every imaginable basis for further litigation but rather should look

forward to rehabilitation and to becoming a constructive citizen.

*Schneckloth v. Bustamonte*, 412 U.S. 218, 258, 262, 93 S.Ct. 2041, 2064, 2065, 36 L.Ed.2d 854 *on remand*, 479 F.2d 1047 (9th Cir.1973); *see also Kaufman v. United States*, 394 U.S. 217, 235–236, 89 S.Ct. 1068, 1079, 22 L.Ed.2d 227 (1969) (Black, J., dissenting) ("... [G]uilt or innocence is at least one of the vital considerations in determining whether collateral relief should be available to a convicted defendant").

Judge Henry J. Friendly has expressed a similar view, suggesting that habeas corpus review be limited to those petitions raising some tenable claim of innocence:

After trial, conviction, sentence, appeal, affirmance, and denial of certiorari by the Supreme Court, in proceedings where the defendant had the assistance of counsel at every step, the criminal process, in Winston Churchill's phrase, has not reached the end, or even the beginning of the end, but only the end of the beginning. Any murmur of dissatisfaction with this situation provokes immediate incantation of the Great Writ, with the inevitable initial capitals, often accompanied by a suggestion that the objector is the sort of person who would cheerfully desecrate the Ark of the Covenant. My thesis is that, with a few important exceptions, convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence.

Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 142 (1970).

While the present defendant has not initiated a collateral attack on his conviction but seeks only to appeal this Court's disposition of his case, *but see* Footnote 5, the Court opines that the perspective shared by Justice Powell and Judge Friendly is an appropriate guide for resolving the pending motions. As stated above, the Court conducted not one but two hearings to satisfy itself that there was a sufficient factual basis for accepting the defendant's guilty plea and that defendant was entering that

plea knowingly and voluntarily and with a thorough understanding of the charges and penalties he was facing. In this regard, the transcript of the August 12, 1983, hearing fully documents the thorough efforts of both the Government and defense counsel to ensure that the defendant was wholly satisfied with the proceedings of August 12, 1983, and fully prepared to confess his guilt to the offense charged in the indictment—a confession he then made competently and on the record. Under these circumstances, the Court would be hard-pressed to justify the expenditure of public funds to support defendant's appeal of a conviction entered upon his own guilty plea.

Today's decision mirrors that of the senior judge of the United States District Court for the District of Arizona who, in 1976, was presented with a motion for leave to proceed on appeal in forma pauperis by two defendants found guilty of smuggling and possessing large quantities of marijuana. Prior to sentencing, both defendants admitted their guilt to a United States Probation Officer and expressed their intention never again to become involved in any illegal activity. In terse reply to the defendants' requests pursuant to Rule 24(a) of the Federal Rules of Appellate Procedure, Judge Murphy stated:

> It is very difficult for us to understand that the Congress, under the Criminal Justice Act, or the Supreme Court by its promulgation of the Federal Rules of Appellate Procedure, intended to permit convicted defendants to appeal at the taxpayers' expense *when they freely and voluntarily admit their guilt.* We regret that we are unable to find any authority for our action, but perhaps the American public will. There is, however, a growing body of law arising slowly to the surface that there should be a colorable claim of innocence on all appeals.

*United States v. Garcia,* 412 F.Supp. 281, 282 (D.Ariz.1976) (emphasis original). This Court joins in that belief and accordingly denies defendant's companion motions filed pursuant to 18 U.S.C. Section 3006A and 28 U.S.C. Section 1915(d).

CONCLUSION

For the reasons stated herein, the Court hereby DENIES defendant's motion for an enlargement of time in which to file a notice of appeal; DENIES his request for appointment of counsel; and DENIES his motion for leave to proceed in forma pauperis.