**Stanley Earl WILSON, Plaintiff,**

v.

**C.E. JONES, Warden and The Attorney General for The State of Alabama, Defendants.**

Civ. A. No. 87–A–1905–S.

United States District Court, N.D. Alabama, S.D.

Aug. 21, 1989.

John Charles Robbins, Birmingham, Ala., for plaintiff.

Don E. Siegelman, Martha G. Ingram, Office of the Atty. Gen., Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

ALLGOOD, Senior District Judge.

This case is before the court for review of the Report and Recommendation of the United States Magistrate that the petition for writ of habeas corpus be granted and the State's objection thereto.

Following a thorough review of the record, an evidentiary hearing on the petition and obvious careful consideration, the Magistrate determined that the jury before which Stanley Earl Wilson was tried, was selected in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the petition should be granted and Wilson retried. The Attorney General for the State of Alabama filed objections to these findings. The petitioner has filed no objections. The district court must now make a *de novo* determination of those portions of the report to which objections have been made. 28 U.S.C.S. § 636(b)(1)(C) (1979).

On August 21, 1983, Wanda Jones, her husband and several friends went to Baby Doe's Restaurant in Birmingham, Alabama, for dinner. The eight to ten friends were celebrating the birthday of one of the members of the group. Around 12:30 a.m., Mr. and Mrs. Jones decided to leave and she went to the restroom while he went to pay the bill. When Wanda Jones returned to the table, her husband was not there. Assuming that he had gone to get their car, Mrs. Jones left the restaurant and started towards the parking lot. As she got to the end of the walkway leading from the restaurant to the parking lot, a black Oldsmobile pulled up and a black man jumped out of a car, grabbed her and threw her into the car. The abductor put his hand over her mouth to stop her screaming and crying and began giving the driver directions, instructing him to drive slowly and not drive over 55 miles per hour. He then asked Mrs. Jones if she had any money, took his foot and pushed her into the back seat and told her to remove her clothes. Over the course of the next several hours she was repeatedly raped and sodomized by the defendant and his two ac-

complices. First, the petitioner pulled her up onto the seat and raped her, then forced her to perform oral sex. The petitioner then swapped places with the driver, Michael Thomas. Thomas removed Mrs. Jones' diamond earrings, her diamond engagement ring, her wedding band, her diamond dinner ring, her diamond pendant and her Rolex watch. Wilson told Mrs. Jones that he would have turned her loose if she had had one hundred dollars (she only had forty-five). After driving around for about thirty minutes, the abductors took her to a house which she learned later belonged to a relative of one of the men. Mrs. Jones was taken to a bedroom in the house and raped again by the petitioner. Petitioner then left the room and another man, who had not been in the car, came in and raped her. One of the men who had been in the car then came in and told Mrs. Jones that she needed to take a bath and led her to the bathroom. Afterwards, she was taken back to the bedroom where Wilson came back in and made her perform oral sex on him again. Another one of the men who had been in the car returned, raped her, then took her to the bathroom and made her get in the bathtub with him. After making her stay in the bathtub with him for about twenty minutes he took her back to the bedroom where another man came in and raped her. He left and Wilson came in and forced her to have anal sex. One of the passengers in the car came back in and forced her to perform oral sex on him. After several hours of this brutal treatment, she was finally told they were going to take her somewhere and put her out. They put her in the car and Wilson again raped her and made her perform oral sex on him before they put her out in the Pioneer Restaurant parking lot and told her not to look back. Mrs. Jones found some people in the parking lot, told them what happened and asked them to take her to the police. The police officer immediately sent her to the hospital. The examining doctor's testimony corroborated everything the victim had said about her assault. Mrs. Jones later identified Wilson as the man who initially grabbed her and threw her in the car.

Wilson was tried before a jury of ten whites and four blacks. He was found guilty of first degree rape, first degree sodomy, and second degree kidnapping. On April 27, 1984 he was sentenced to a total of 218 years in prison.

On direct appeal, Wilson raised, among other issues, a challenge to the racial composition of his jury. *Batson* had been decided on April 20, 1986, two years after Wilson's trial, but before the time for appeal had expired. In *Batson*, the Supreme Court held that a defendant could establish a prima facia case of equal protection violation solely on the basis of proof of the prosecutor's actions in his case alone. Prior to this decision a defendant had to prove that blacks had been systematically excluded from all juries to establish a constitutional violation. *Allen v. State*, 414 So.2d 163 (1982); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

In *Batson*, the Supreme Court held that a defendant establishes a prima facie case of purposeful discrimination in the selection of the jury if he shows that: (1) he is a member of a cognizable racial group; (2) the prosecutor used peremptory strikes to remove members of the defendant's race from the venire; and (3) the facts and circumstances raise an inference of purposeful discrimination. *Id.* 476 U.S. at 96. Based on that decision, Wilson claimed that he was tried before a jury that was the product of a racially discriminatory selection process because the prosecutors used their peremptory strikes to remove blacks from the venire. The State argued that the petitioner had not preserved that issue for appeal when he failed to comply with State procedural rules at trial. The Alabama Court of Criminal Appeals agreed as evidenced by affirming without opinion on April 28, 1987. An application for rehearing was denied. The issue was again raised in a petition for writ of certiorari filed before the Alabama Supreme Court. This petition was also denied without opinion.

■ Wilson then filed a petition for writ of habeas corpus in Federal Court, pursuant to 28 U.S.C.S. § 2254 (1979), claiming

that the state court erred in not remanding his case for a *Batson* hearing. The State argues that the *Batson* claim is barred from federal review because of the petitioner's default in state court.[1] Despite Wilson's argument, an appellate court is not required to remand a case to the trial court for an additional hearing if the record is sufficient for the appellate court to make a determination as to whether or not an inference of purposeful discrimination can be raised.

At the time the state court reviewed Wilson's case, when a court affirmed without opinion, a presumption arose that the affirmance was based on a procedural default. This presumption arose only if a procedural default had been asserted and the court had not clearly indicated that in affirming it had reached the merits of the case. *See Bennett v. Fortner,* 863 F.2d 804 (11th Cir.1989), *cert. denied* — U.S. ——, 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989); *Sinclair v. Wainwright,* 814 F.2d 1516 (11th Cir.1987).

■ In February, 1989, the Supreme Court in *Harris v. Reed,* — U.S. ——, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (adopting the rule of *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)), said, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case " 'clearly and expressly' " states that

its judgment rests on a state procedural bar." 109 S.Ct. at 1043. This decision was rendered after Wilson's appeal and should not be retroactively applied.

Even though Federal courts have traditionally allowed state courts to have the final say on their own procedural rules, in some very limited situations this court can look beyond a state procedural default and consider the prisoner's contention that his constitutional rights have been violated. The Supreme Court has said, "[W]hen a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and prejudice." *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783, 801 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). This test was designed to ensure the adjudication of Federal claims in Federal court when the failure to do so would result in a miscarriage of justice. 433 U.S. at 90, 97 S.Ct. at 2508.

Following an evidentiary hearing, the Magistrate found that the defendant had overcome the procedural default by showing both cause and prejudice. This determination provided the basis for concluding that Wilson's case must be retried. The State has raised objections to these findings in particular. The court must now determine whether the petitioner has shown both a "cause for and actual prejudice from" the default.

---

1. After the jury was selected, but before the trial began, Wilson moved for a mistrial and the following exchange took place out of the presence and hearing of the jury:

    MR. COLEE: We would just move for a mistrial based on the State striking seven blacks from the jury. I know it is required to show more than just one case, I don't know whether right now is the time or whether a conviction, a motion for a new trial is the time to go into the systematic exclusion of blacks. But, respectfully we move for a mistrial. Of course, the court is saying we need to prove, right now, today, more than one case, we would request a continuance and then proceed to do that; based on the systematic exclusion of seven strikes, seven blacks from this jury.

    And further, my response that this is the correct jury, I don't want that to mean that I agree that this is the jury that should be there.

    THE COURT: Fine, I understand.

    MR. COLEE: It was just the correct jury as far as being struck. I know of several cases where you waive your mistrial motion. that is basically what we mean—

    THE COURT: All right.

    MR. DeCARLO: Your Honor, may I comment?

    THE COURT: Yes, sir.

    MR. DeCARLO: Let the record indicate we have four blacks on the jury. And, then, too, we have the case of *Allen,* where it says the State can strike whomever they please. It has gone to the Supreme Court of the State of Alabama and not unconstitutional for us to strike whomever we wish.

    THE COURT: All right. Overruled, Don.

■ The first prong of this test requires a showing by the petitioner that there was cause for the default. This requirement is satisfied if counsel fails to raise an issue which is novel and reasonably unknown to him. *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). In *Engle*, the Supreme Court said, "Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." 456 U.S. at 134, 102 S.Ct. at 1575.

■ The question for this court is whether the state of the law at the time of his trial, offered a reasonable basis for Wilson to challenge the composition of his jury. At the hearing before the Magistrate, testimony was taken from all of the attorneys who had been involved in the case, including the district attorney; the deputy district attorney, who tried the case; the defense attorney, and a former deputy district attorney who has been a prosecutor in the same office for almost twenty years. Wilson's attorney testified: that he had been a deputy district attorney from 1976 to December 1983; that he went into private practice in December 1983; that as a deputy district attorney he had tried between one and two hundred cases before juries; that he was very familiar with the cases of *Allen* and *Swain,* which were the applicable law at the time; and that he knew the policies and practices of the district attorney's office. He also testified that at the time of Wilson's trial he was aware of rulings in other states which were moving in the direction of *Batson.* Based on this evidence, the court can find no cause for petitioner's failure to raise a *Batson* type claim at trial.

The court would not expect the defense attorney to perfect a *Swain* claim, but the lawyer did not make an offer of proof or some explanation to the court that he was concerned that the jury his client was facing was unfairly constituted or even that his client's race was under-represented. "[D]efense counsel may not make a tactical decision to forego a procedural opportunity—for instance, an opportunity to object at trial ... then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court." 468 U.S. at 14, 104 S.Ct. at 2909.

The *Batson* court noted that several jurisdictions had already rejected the *Swain* standard. At the hearing held by the Magistrate there was testimony from more than one of the deputy district attorneys that they were aware of cases in other jurisdictions holding the way *Batson* ultimately held. One of them even testified that they were all aware that things were changing and that the attitude of the courts was changing.[2] This was the testimony of an attorney who until just four months before this trial was a colleague of the petitioner's attorney.

■ Even if this court could find that there was cause for the failure to pursue the *Batson* claim it can certainly not find that the defendant suffered any actual prejudice by the government's use of its peremptory challenges to remove blacks from the jury. Despite the cause for Wilson's failure to comply with the procedural rules, there was no actual prejudice resulting from the alleged constitutional violation. In order to prove prejudice, the defendant must show that "there is a reasonable possibility" that, but for the error, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Wilson confessed to having sexual intercourse with the victim even though he claimed that she had consented. Nowhere in the hundreds of pages of motions, briefs or evidence, is there even a suggestion of

---

**2.** Q. Do you recall the then existing law:
 A. Well, *Allen* was the existing law in the State of Alabama. However, there had been a California case that had not gotten into the federal system that a conviction was successfully attacked on the State striking all minorities or

systematic striking. And there was a Florida case and a Louisiana case and they seemed to be going in that way. So although *Batson* had not come about, there was a feel that something, whatever its name was going to be, was going to come about.

innocence. The State has spent thousands of dollars prosecuting this case, and many more thousands defending the appeals. The victim has herself been victimized again by the whole court process, which up to this point has been a necessary part of our judicial process.[3] To force the State and the victim to again spend thousands of dollars and hours trying a defendant who has not once suggested that he is innocent, on the off chance that memories could have blurred or a witness not be able to testify would be to make a mockery of the system we treasure. To force a replay of this trial would be to put form over substance and be a case of letting the tail wag the dog.

There is nothing to indicate that Wilson was unfairly tried. The jury which found Wilson guilty was not an all white jury, on the contrary it had four black members, black jurors who were as appalled by the evidence they heard as the white jurors.[4] That mixed jury rejected the preposterous consent argument and found Wilson guilty. In *Wainwright* the Supreme Court found that the evidence of guilt at trial negated any possibility of actual prejudice. To imply that a jury with more black members would have overlooked the overwhelming evidence of guilt and acquitted Wilson, amounts to impugning the integrity of every black juror who sits in judgment of a black defendant.

The hearing, adjudication and disposition of criminal cases is accomplished within the criminal justice system. Federal habeas review of a state court conviction is an extension of this system.

The operative and definitive word describing this mechanism is "JUSTICE". Does the system do justice to victims of crime and to society? Is the accused accorded due process of law? If these questions can be answered in the affirmative, the mechanism can accurately be described as a system of justice.

Since the beginning of recorded history, society has pursued the ideal of justice as that concept has been perceived at a particular time. Regardless of the era, the compelling theme in measuring the effectiveness of a criminal justice system has always been and is now—does the system punish the guilty and protect the innocent? If the guilty go free and the victim is violated, not only by the criminal act but by the system, the term "justice" cannot be accurately used in describing the procedure.

By what its proponents claim is judicial crusading, we are rapidly creating a monster in the form of collateral review of final convictions. These petitions are inundating the Federal system. This results, in part, from the laudable desire to be absolutely certain that no innocent person be convicted of a crime that he or she did not commit. This monster is sapping the faith that the American public has in the courts and our judicial system.

It is high time that we begin to consider the victim, society as a whole and in particular the taxpayers whose taxes are to a very large extent being wasted by allowing endless review and petitions for habeas corpus, a very small percentage of which merit relief.[5]

This conclusion is not original. It has been explained over and over again by judges, lawyers, legal writers and others who feel that somewhere sometime a stop must be put to this legal game of collateral attack on final criminal judgments.

In applying "judge-made" criteria to determine the validity of a final criminal judgment, judges all too frequently overlook the central issue—the guilt or innocence of the accused.

In his dissent in *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), Mr. Justice Black said:

> ... the defendant's guilt or innocence is at least one of the vital considerations in

---

**3.** In addition to the numerous statements she had to give to doctors, policemen and attorneys, Mrs. Jones has testified on three separate occasions at the trials of her assailants.

**4.** Of the 14 people on the jury, two were alternates and excused prior to deliberation. From

the record it is not possible to tell whether the alternates were black or white.

**5.** An educated guess—less than 1-½ percent merit any relief.

determining whether collateral relief should be available to a convicted defendant.... In collateral attacks ... I would always require that the convicted defendant raise the kind of constitutional claim that casts some shadow of doubt on his guilt.

*Id.* at 235–242, 89 S.Ct. at 1079–1082.

The trial record in this case proves beyond any and all doubt that Wilson committed a heinous crime. The record further reflects that Wilson received a fair trial before a racially balanced jury of his peers selected in a non-discriminatory fashion.

Wilson has admitted the material facts which are the basis of the charges against him. Should this case be retried, a reasonable jury regardless of its composition would, without a doubt, proclaim Wilson's guilt. It would be an insult to the citizens of Jefferson County, black or white, to suggest otherwise.

Is guilt irrelevant? As Judge Friendly has so brilliantly explained, this question must be emphatically answered, "NO"![6]

To briefly summarize: the only conceivable legal issue available to this petitioner is that created by the *Batson* decision. Petitioner cannot claim protection under the *Batson* umbrella. Petitioner's trial counsel, without cause, failed to preserve a *Batson* issue during trial. Petitioner is, therefore, procedurally barred from reliance on *Batson* in this collateral attack on his conviction. Common sense, common decency and the principles of justice require that this assault on society and one of its members by this petitioner be brought to a final conclusion.

For the above stated reasons, this court finds that Wilson has failed to establish cause or prejudice for his procedural default. The petition for habeas corpus must be, and the same hereby is, DENIED. An order in conformity with this memorandum opinion will be entered.

---

**6.** Friendly, *Is Innocence Irrelevant? Collateral*    *Attack on Criminal Judgments,* 38 U.Chi.L.Rev.